[No. 10966.  *En Banc.*  March 3, 1913.]

PATRICK H. DOLAN *et al.*, *Appellants*, v. PUGET SOUND
TRACTION, LIGHT & POWER COMPANY, *Respondent*,
THE CITY OF SEATTLE, *Appellant*.[1]

STREET RAILROADS—FRANCHISES—ORDINANCES. A street railway
franchise ordinance to extend lines for two blocks, expressly de-
claring that nothing therein contained shall affect any franchise prev-
iously granted or authorize the city to acquire any property in the
public streets heretofore constructed or located under any franchise
previously granted, conflicts with a provision in a city charter pro-
viding that when any franchise is granted, the grantee shall vol-
untarily agree that "all the property of the grantee within the
limits of the public streets" may be taken by the city at a fair
valuation.

STREET RAILWAYS—ORDINANCE—FRANCHISE— VALIDITY — CONFLICT
WITH STATE LAW. The city charter of Seattle, art. 4, § 20, making
an ordinance granting a street railway franchise subject to a refer-
endum vote of the people, and requiring any extension, or new fran-
chise covering any substantial part of an old one, to be first sub-
mitted to a vote of the qualified electors, is void; since the legisla-
ture by Rem. & Bal. Code, § 9080, has vested in the legislative author-
ity of the city the power to grant street railway franchises without
the restrictions imposed by the charter.

MUNICIPAL CORPORATIONS—CHARTERS — POWERS — STATUTES — IM-
PLIED REPEAL—STREET RAILWAYS—FRANCHISES. Laws 1911, p. 54,
§§ 1-3, providing that the form of the organization and the manner
and mode in which cities of the first class shall exercise powers "with
respect to their own government" shall be as provided in their
charters, and authorizing direct legislation "within the scope of such
powers" by the initiative and referendum, does not impliedly repeal
Rem. & Bal. Code, § 9080, conferring upon the mayor and council the
power to grant franchises; since the power to grant franchises
is a sovereign power which may be delegated by the state and is
not within the act of 1911 relating to powers exercised by cities,
"with respect to their own government."

Appeal from a judgment of the superior court for King
county, Dykeman, J., entered December 4, 1912, dismissing
an action for an injunction, on sustaining demurrers to the
complaints. Affirmed.

[1]Reported in 130 Pac. 353.

*Raymond D. Ogden* and *Edwin S. Douglas*, for appellants Dolan.

*James E. Bradford,* for appellant city of Seattle.

*James B. Howe* and *Hugh A. Tait,* for respondent.

Mount, J.—The trial court sustained defendant's demurrers to the complaint of the plaintiff, and to the complaint in intervention filed by the city of Seattle. The plaintiffs and the city both elected to stand upon the allegations of their complaints, and the action was dismissed. This appeal followed.

The facts are substantially as follows: On November 18, 1912, the city council of Seattle passed an ordinance granting a franchise to the respondent to extend its street car lines a distance of two blocks upon one of the public streets of the city. This ordinance, which was duly passed and approved by the mayor, contained the following provisions:

"It is expressly stipulated and agreed by the city of Seattle and its successors that nothing in this franchise contained shall in any manner affect any franchise previously granted by the city of Seattle or by the county of King or by any other municipal corporation, nor shall anything herein contained authorize the city of Seattle or its successors to acquire any property in the public streets of the city heretofore constructed or located under any franchise previously granted, nor shall any franchise or any property constructed or located thereunder be considered altered, amended, repealed, or in any manner modified by this ordinance."

The city charter, art. 4, § 20, provides as follows:

"Every grant of a franchise, right or privilege shall be subject to the right of the city council, or the people of the city acting for themselves by the initiative and referendum, at any time subsequent to the grant, to repeal, amend or modify the said grant with due regard to the rights of the grantee and the interest of the public; and to cancel, forfeit and abrogate any such grant if the franchise granted thereby is not operated in full accordance with its provisions, or at all; and at any time during the grant to acquire, by pur-

chase, or condemnation, for the use of the city itself, all the property of the grantee within the limits of the public streets, at a fair and just value, which shall not include any valuation of the franchise itself, which shall thereupon terminate; and every ordinance making any such grant shall contain a reservation of these rights of the city council, and of the people of the city acting for themselves by the initiative and referendum, to so repeal, amend or modify said ordinance and to so cancel, forfeit and abrogate the grant, and to so acquire the property of the grantee in the public streets, as hereinbefore set forth. The city council shall not consider or grant any application for extension of the period of any franchise, nor any new franchise covering all or any substantial part of the rights or privileges of any existing franchise, until within three years of the expiration of the existing grant, and then only after submission to and approval by majority vote of the qualified electors."

After the ordinance above referred to was passed, and all the preliminary steps taken by the city authorities and the respondent to carry out the terms of the ordinance, this action was brought to restrain the respondent from accepting the franchise provided for by the ordinance, upon the ground and for the reason that the ordinance is void. The appellants Dolan and wife contend that the ordinance is void because it is in conflict with § 20, art. 4, of the city charter as above quoted. The city contends that the ordinance is valid because it does not conflict with the city charter. The respondent contends that the charter provision is void, and the ordinance is therefore valid. The trial court, in passing upon the demurrers, was of the opinion that § 20, art. 4, of the city charter, was void, and that the ordinance passed by the city council and approved by the mayor was a valid exercise of legislative authority. The real question in the case, therefore, is whether the ordinance is valid.

There can be no doubt that the ordinance is in conflict with § 20 of the city charter above quoted, because this provision of the charter is to the effect that every franchise granted shall be subject to the right of the city council or the people

to acquire "all the property of the grantee within the limits of the public streets," which shall not include any valuation for the franchise itself; "and every ordinance making any such grant shall contain a reservation of these rights of the city council and of the people." The ordinance in question does not reserve these rights, but expressly declares "that nothing in this franchise contained shall in any manner affect any franchise previously granted by the city of Seattle or by the county of King or by any other municipal corporation, nor shall anything herein contained authorize the city of Seattle or its successors to acquire any property in the public streets of the city heretofore constructed or located under any franchise previously granted." It seems plain that this provision of the ordinance is in the face of the charter, because the apparent purpose of the charter provision is that, when a franchise is granted and accepted, the grantee thereby voluntarily agrees that "all the property of the grantee within the limits of the public streets" may be taken at a fair and just value, which shall not include any valuation of the franchise itself. The provision is not "all the property of the grantee within the limits of the franchise granted," as counsel for the city seem to contend, but "all the property of the grantee within the limits of the public streets." We think there is no escape from the conclusion that the ordinance is in conflict with the city charter.

The question then arises whether this provision of the city charter is valid. In *Benton v. Seattle Elec. Co.*, 50 Wash. 156, 96 Pac. 1033, in considering this same charter provision, we held it was void because it was in conflict with the Laws of 1903, page 364, as amended by Laws of 1907, page 192 (Rem. & Bal. Code, § 9080), which vests in the legislative authority of the city the power to grant franchises, and because the legislative authority of the city means the *mayor* and *city council*. In *Ewing v. Seattle*, 55 Wash. 229, 104 Pac. 259, we again held that the state law authorizing the mayor and the city council of cities to grant franchises to

street railways is conclusive, and controls charters of cities of the first class. In that case, we said, at page 240:

"If that charter amendment did not legally require the legislative authority of the city to embody the conditions therein specified, in the franchise, and did not legally require the submission of the franchise to a vote of the people of the city, because of the broad powers given by the state legislature in these laws, then, upon the same principle, the legislative authority of the city was not legally required to invite bids for the franchise, nor legally required to grant the same to the highest bidder. If the charter provision does not limit or control the exercise of the power granted by the state law in the one instance, it is manifest it does not do so in the other. It having become the settled law of this state, by the construction repeatedly placed upon the constitution, that a general law enacted by the legislature is superior to and supersedes all freehold charter provisions inconsistent therewith, it becomes plain that, when the legislature, by the Laws of 1903 and 1907, gave to the legislative authority of the cities of the state the power to grant street railway franchises, and also the power to *'prescribe the terms and conditions on which such railways . . . shall be constructed, maintained and operated,'* that power cannot be limited or prescribed by freehold charter provisions. The legislative power given by these laws to the mayor and council, to grant such franchise, includes the power to name the grantee, which power, under such laws, is as purely legislative as any other part of the power conferred. To hold that a freehold charter provision may so limit this power as to reduce the exercise of it to a mere ministerial or at most a judicial act, thus rendering it reviewable by the courts, would be to take from the mayor and council a portion of the legislative power directly conferred upon them by a general law of this state."

It is argued by counsel for the city that the act of 1911, Laws 1911, page 54, relating to the form of organization and exercise of powers of cities of the first class, repeals the act of 1903, as amended by the act of 1907 [Rem. & Bal. Code, § 9080] relating to the electric street railways, and validates § 20 of art. 4, of the Seattle charter, which this court had theretofore held invalid. But we are satisfied that the act of

1911, referred to in the briefs as the Gandy act, was not so intended, and does not repeal the act of 1903, as amended in 1907, relating to electric railways. The act of 1911 is as follows:

"Section 1. The form of the organization and the manner and mode in which cities of the first class shall exercise the powers, functions and duties which are or may be given by law to such cities, with respect to their own government shall be as provided in the charters thereof.

"Sec. 2. Any such city may provide in its charter for the recall of election officers and for direct legislation by the people upon any matter within the scope of such powers, functions or duties of any such city by the initiative and referendum.

"Sec. 3. This act shall apply to any charter of any such city heretofore adopted or approved by the electors at an election duly held."

It is clear that this act relates to the form of organization and the exercise of powers "*with respect to their own government.*" It authorizes such cities to adopt their own charters, and authorizes direct legislation upon any matter within the scope of "*such powers;*" that is, with respect to their own government. The power to grant franchises is a sovereign power. It may be delegated by the state, but it is not within the powers of cities unless expressly delegated by the state. *State ex rel. Spring Water Co. v. Monroe,* 40 Wash. 545, 82 Pac. 888. When the legislature of the state authorizes cities of the first class to frame their own charters, and says that the powers, duties, and functions shall be as provided therein with respect to their own government, it cannot be reasonably claimed that the right to grant franchises is included therein; (1) because such grants must be direct and clear, and (2) because the grant of franchises is not a part of their "own government," but is a delegated power of the state. We are satisfied, therefore, that the act of 1911 did not revive § 20 of art. 4 of the Seattle charter, and did not repeal by implication or otherwise the act of 1903 as amended in 1907,

relating to electric railways. That act is in full force and effect in cities of the first class. The ordinance in question passed by the legislative authority is therefore valid.

The judgment is affirmed.

CROW, C. J., PARKER, GOSE, MAIN, and CHADWICK, JJ., concur.