[No. 19921.   Department One.   June 10, 1926.]

THE STATE OF WASHINGTON, *on the Relation of Robert H. Harlin et al., Plaintiff,* v. THE SUPERIOR COURT FOR KING COUNTY, *Respondent.*[1]

[1] MUNICIPAL CORPORATIONS (119-1, 124)—PUBLIC IMPROVEMENTS—STREET RAILWAY—SUBMISSION TO POPULAR VOTE. The city of Seattle has authority to acquire a street railway, under Rem. Comp. Stat., §§ 9213 and 9488, authorizing cities to own and operate street railways, and § 9489, requiring the city council to provide therefor by ordinance and submit the proposition to the voters for approval; and Seattle city charter, Article 4, § 1, vesting the legislative powers of the city in a mayor and city council, with reservation of the right of referendum to the voters as to the exercise of ordinary legislative authority.

[2] SAME (123, 124)—PUBLIC IMPROVEMENTS—STREET RAILWAYS—EXERCISE OF POWER—SUBMISSION TO POPULAR VOTE. The acquisition of a street railway by a city to be referred to the voters under Rem. Comp. Stat., § 8949, is the exercise of legislative authority, within Seattle city charter Article 4, § 1, reserving the right of referendum of ordinary legislative authority.

Certiorari to review a judgment of the superior court for King county, Ralston, J., entered March 24, 1926,

[1]Reported in 247 Pac. 4.

dismissing a taxpayers' action to enjoin a special election, upon sustaining a demurrer to the complaint and dissolving a temporary injunction. Affirmed.

*Wright, Froude, Allen & Hilen,* for relators.

*Thomas J. L. Kennedy, Roy Dumett,* and *Arthur Schramm,* for respondent.

ASKREN, J.—On November 30, 1925, the city council of Seattle duly enacted an ordinance, providing for the purchase from the Seattle and Rainier Valley Railway Company of its street railway system, situated in King county, and located partly within the limits of the city of Seattle, and within a distance of not exceeding eight miles thereof outside its corporate limits. Under the provisions of the ordinance, no general obligation was to be assumed by the city, but the system was to be paid for by the creation of a special fund to be derived from the operation of the utility in question.

Thereafter, certain persons being dissatisfied with the action of the council in providing for this purchase, a referendum petition was circulated for the purpose of requiring this ordinance to be referred to the voters of the city. This was filed with the city comptroller.

Thereafter this proceeding was commenced, alleging that, unless the city comptroller was restrained, he would certify to the city council that the referendum petition contained the number of names required by law to submit the ordinance to a vote of the people, and that it would be submitted, although the ordinance was not one which was subject to referendum. A temporary restraining order was issued, which was afterwards dissolved, and the relators electing to stand upon the complaint, the action was dismissed. Thereafter, relators applied to this court for a writ of review.

The hearing in this court presents the question, whether the ordinance is referable. Relator contends

that there are two reasons why the ordinance is not: first, that the authority of the city council, under the utilities act passed by the legislature, cannot be taken away through charter provisions; and secondly, that the ordinance in question has to do with an administrative, or quasi judicial, act and that referendum does not therefore apply to it.

[1]   In considering these questions, it may be well, first, to determine the authority under which the right is exercised by the city to acquire a public utility such as the one in question. Section 9488, Rem. Comp. Stat. [P. C. § 1214], provides in part:

"Any incorporated city or town within the state be, and hereby is, authorized to . . . construct, condemn and purchase, purchase, acquire, add to, maintain, operate or lease cable, electric and other railways within the limits of such city or town for the transportation of freight, and passengers above or underneath the ground, . . ."

Section 9213 [P. C. § 1234], provides in part:

"Any municipal corporation in the state of Washington which now owns or operates, or which may hereafter own or operate, any street railway within the corporate limits thereof, may acquire, construct and extend, own and operate such street railway to any point or points not to exceed eight miles of its said corporate limits, measured along the line of such railway:"

Section 9489 [P. C. § 1215], provides in part:

"Whenever the city council or other corporate authorities of any such city or town shall deem it advisable that the city or town of which they are officers shall purchase, acquire or construct . . . any additions or betterments thereto or extensions thereof, the common council or other corporate authorities shall provide therefor by ordinance, which shall specify and adopt the system or plan proposed, and declare the estimated cost thereof as near as may be, and the same

shall be submitted for ratification or rejection to the qualified voters of said city at the general or special election, except in the following cases where no submission shall be necessary:''

''(2) Where in any charter of any city or town in the state of Washington heretofore or hereafter adopted by a vote of the people, an article or provision has been adopted authorizing the city council or other corporate authorities of such city to provide by ordinance for acquiring, opening or operating any of said public utilities, for which no general indebtedness is to be incurred, by such city or town. . . . Whenever a proposition has been adopted as aforesaid or in the cases mentioned in subdivisions first and second of this section where no submission shall be necessary the common council or other corporate authorities of such city or town shall have power to proceed forthwith to purchase, construct, and acquire the public utility contemplated or to make additions, betterments and extensions thereto and to make payment therefor as hereinafter provided in section 9490 and section 9491.''

The next question arising is, has the city of Seattle any charter provisions which bring the ordinance in question within § 9489, *supra?* Article III, § 18, subd. 15, of the Seattle charter, provides that the city council shall have power by ordinance, and not otherwise, to purchase, acquire, add to, maintain, and operate, within or without the limits of the city, electric and other railways for the transportation of freight and passengers, and to provide for payment therefor by utility revenue bonds. It is further provided that, in all cases where a general indebtedness is to be incurred, such ordinance shall be submitted for ratification or rejection to the qualified voters of the city. Section 1, of art. IV, provides:

''The legislative powers of the city shall be vested in the Mayor and City Council . . . and there is further reserved by, and provision made for, the exercise by the people of the city of the power at their

option to require submission to a vote of the qualified electors and thereby to approve or reject at the polls any ordinance or any section or item or part of any ordinance dealing with any matter within the realm of local affairs or municipal business which may have passed the city council and mayor acting in the generally prescribed manner as the ordinary legislative authority."

It will thus be seen that, under the sections just quoted, the city of Seattle has the power to acquire the street car system in question, and, if there is no general indebtedness to be incurred, to do so without submitting the proposition to the electorate, unless a referendum be invoked thereon under the city charter. The referendum having been invoked, the relators urge that the grant by the legislature to purchase or acquire a street car system, where no general indebtedness is incurred, is to the legislative authority of the city, and not to the corporate entity thereof. We have heretofore held that, if the grant is to the legislative authority of the city, its action is not subject to the provisions of a city charter, for the effect thereof would be to limit the power conferred by statute. *Benton v. Seattle Electric Co.* 50 Wash. 156, 96 Pac. 1033; *Ewing v. Seattle,* 55 Wash. 229, 104 Pac. 259; *Dolan v. Puget Sound T., L. & P. Co.* 72 Wash. 343, 130 Pac. 353.. But we have also held that, if the grant is to the corporate entity of the city, the referendum may be invoked. *State ex rel. Walker v. Superior Court,* 87 Wash. 582, 152 Pac. 11.

A reference to the cited sections of the statute show that the grant in § 9488, *supra,* is to "any incorporated city or town," and in § 9213, *supra,* to "any municipal corporation." These are clearly grants to the corporate entity of the city, as distinguished from the legislative authority. But it is said that § 9489 gives the grant to the legislative authority under the words contained in the second section, where it is provided,

"Whenever a proposition has been adopted as afore-said or the cases mentioned in subdivisions first and second of this section where no submission shall be necessary the common council or other corporate authorities of such city or town shall have power to proceed forthwith to purchase, . . ."

But it is plain that § 9489 provides for the procedure and does not embody the grant of power. This holding is not in conflict with *Shorts v. Seattle,* 95 Wash. 538, 164 Pac. 241, where we held that the charter requirement as to special utility bonds was in conflict with § 9491 [P. C. § 1217] of the statute, which provided that special utility bonds should be ". . . executed in such manner and payable at such times and places as the common council or other corporate authorities of such city or town shall determine, . . ." It was there held, that fixing of the date of maturity of the bonds was left to the legislative authority, and could not be circumscribed by charter provisions. The granting of authority to the common council or corporate authorities to determine times of payment of bonds does not necessarily carry with it, nor imply, the grant of power to acquire the public utility in the first instance.

We think, therefore, the proper construction of this act is that the city, as a corporate entity, has been granted the power to acquire the street car system, and that § 9489, *supra,* merely provides the procedure. To hold otherwise would be to determine two specific grants of power, one to the city as a corporate entity, when a general indebtedness is incurred, and the other to the legislative authority of the city, when no general indebtedness is to be incurred.

We conclude, therefore, that the grant of power is to the city, and that, if the electorate thereof desire to have the ordinance placed before them for their ap-

proval or rejection, they may do so, if there is no other bar.

[2]    This brings us to the second question urged by relator, that the action of the city council in enacting the ordinance was not a legislative act.

It will be observed that, by the city charter, the referendum may be invoked against an ordinance after favorable action thereon by the mayor and city council acting "as the ordinary legislative authority of the city." The statute, § 8949, Rem. Comp. Stat. [P. C. § 698], authorizing cities of the first class to exercise the referendum, provides for ". . . direct legislation by the people upon any matter within the scope of such powers, functions or duties of any such city . . ."

Section 8948 [P. C. § 697], provides that the powers, duties, and functions are limited to "those with respect to their own government."

It is always difficult to ascertain the correct line of demarkation between acts of a city council which are legislative in character, and those which are executive in character. The rule is well settled, however, that the referendum may not be invoked against those acts which are executive in character, but may be as to those which are legislative.

McQuillin, in his work on Municipal Corporations, vol. 7, § 351c, states the rule as follows:

"Both legislative and executive powers are possessed by municipal corporations. Often executive powers are vested in the council or legislative body and exercised by motion, resolution or ordinance. Executive action evidenced by ordinance or resolution does not subject such action to the power of the referendum, which is restricted to legislative action as distinguished from mere administrative action. The form or name does not change the essential nature of the real step taken. The mode of effecting the action is not import-

ant.. If legislative the law contemplates the people may invoke the referendum. The referendum is usually held 'applicable to all ordinances and resolutions which constitute an exercise of legislative power.' That is, it was designed to be directed against 'supposed evils of legislation alone.' 'To allow it to be invoked to annul or delay executive conduct would destroy the efficiency necessary to the successful administration of the business affairs of a city. In many cases it would entirely prevent the exercise of the executive power necessary to carry out the acts determined upon by the legislative department. In the absence of a very clear declaration to the contrary it must be presumed that the power of referendum was intended to apply solely to the legislative powers of the city.' An act purely executive in character, unmixed with the exercise of legislative power, is not subject to the referendum. But if the act done is essentially legislative the referendum may be invoked, irrespective of the naming of the act, whether denominated a motion, resolution or ordinance. Of course, accurately speaking, an ordinance is the proper designation for legislative action.''

As to which acts of a city council are legislative and which executive, the same author, in vol. 1, § 374, has stated the rule:

''Executive and administrative duties are such as concern the executing of existing laws. Acts which require the ordaining of new laws are legislative. Thus where it can be shown that the particular act could not have been done without a law or ordinance, such act is to be considered as legislative. Therefore, a resolution of a council, adopting certain plans and specifications directing a market to be built in accordance with them, and awarding the contract at a specific price, was sustained.''

The authority cited by the learned author in support of the last statement is, *Peterson v. Mayor, etc., of New York,* 17 N. Y. 449. In that case, it was held that a resolution appropriating a sum of money, for the

10—139 WASH.

rebuilding of a public market in accordance with certain plans and specifications, was a legislative and not an executive act. The referendum was not invoked in this case, but the court's views as to the distinction between legislative and executive acts may be helpful. It said:

"The question as to the propriety of taking down and re-erecting an important public building is clearly an act of local legislation. Executive duties are such as concern the execution of existing laws, but this act required the ordaining of a new law. . . . It is equally an act of local legislation to fix upon the form and dimensions of a public building. . . ."

In *Dooling v. City Council of Fitchburg*, 242 Mass. 599, 136 N. E. 616, it was sought to subject to the referendum orders authorizing the mayor to execute certain contracts for erection, plumbing, wiring and heating a school house. The court held that the order to sign the contracts was an executive, and not a legislative, act. It was said:

"It is an act of legislation to authorize the construction of a public building, to set a boundary to its cost and to provide money to pay for it. But it is an executive act to select a contractor, to agree with him as to the thing to be done, the precise price, the terms of payment, and the numerous other conditions incident to a building contract."

In *Hopping v. City Council of Richmond*, 170 Cal. 605, 150 Pac. 977, it was held that a resolution of the city council providing for the acceptance of a donation towards the erection of a new city hall, upon condition that the city appropriate a like amount; that the construction of the new city hall be commenced without delay; and that, when the same was completed, it should be used as a city hall, was a legislative act, and therefore subject to referendum.

In *Campbell v. Eugene,* 240 Pac. (Ore.) 418, it was sought to subject to referendum an order or resolution calling a special election to vote upon a municipal measure. The court held that the resolution was not legislative, and said:

"The legislature of this state enacted a law, which was in force in the city of Eugene, providing for ordering special elections to be held to vote upon municipal measures, and the common council of the city, in calling or ordering this special election, . . . was but simply and purely carrying out or executing a law already made by the legislature. An accurate test of the question as to whether an action of the common council is legislative or administrative is the determination of the question whether the act of the council was making a law or executing one already in existence."

If it is a legislative act to adopt plans and specifications for the erection of a public market, as was held in *Peterson v. Mayor etc., of New York, supra,* and if it is an act of legislation to authorize the construction of a public building and set a boundary to its cost, and to provide money for it, as was held in *Dooling v. City Council of Fitchburg, supra,* or to appropriate money for a city hall and provide for its use, as in *Hopping v. City Council of Richmond, supra,* then we think it can well be said that an ordinance providing for the purchase of a street car system, such as this one, and making provision for its payment, is also legislative. The statute and charter provisions giving power to the city are not self-executing. Most of the cases, cited by relator to uphold their contention that the ordinance is not legislative, but executive, may be distinguished from the instant case.

In *Yarbrough v. Donaldson,* 67 Okl. 318, 170 Pac. 1165, it was sought to compel the submission to referendum of a resolution passed by the city council in 1916, which authorized and directed the mayor and

clerk to execute, on behalf of the city, certain contracts between it and a light company, and to execute a warranty deed and bill of sale covering the property sold. The court held that the action of the city council was not legislative, but executive. A reference to the opinion shows that, three years prior thereto, the city of Durant had entered into a contract with the light company with reference to the furnishing of electric current, which provided that, should the city desire to sell its light plant within three years from the date thereof, the company would purchase the same at a price to be agreed upon between the parties. This contract was approved by the city council. It will be observed that, under the facts detailed, the things ordered done by the ordinance were executive, for the contract providing for the rights of the parties had been entered into some three years prior to that time. There was no attempt to refer to the people the initial legislation, but to restrain its execution.

In *McKevitt v. City of Sacramento,* 55 Cal. App. 117, 203 Pac. 132, it was held that a resolution of the city commissioners to expend certain funds bequeathed to it for park purposes in a certain manner was not subject to referendum, because the acts to be done were executive. It appears from the opinion, that the city of Sacramento had accepted a bequest for park purposes. Thereafter, in the administering of this fund, it was sought to do the acts complained of. Here again, like in *Yarbrough v. Donaldson, supra,* there was no attempt to refer the legislative act of the city in accepting the bequest for park purposes, but the action was to refer the execution of the trust. The court said:

"Acts constituting a declaration of public purpose, and making provisions for ways and means of its accomplishment, may be generally classified as calling for the exercise of legislative power. Acts which are

to be deemed as acts of administration, and classed among those governmental powers properly assigned to the executive department, are those which are necessary to be done to carry out legislative policies and purposes already declared by the legislative body, or such as are devolved upon it by the organic law of its existence. As we view it, the proposal of the respondents to the city commission involved only administrative functions. Whether or not the city of Sacramento should acquire the public park and the necessity of making some provision for the means of paying for it became moot questions when the city accepted the trust imposed upon it by the will of William Land. By that acceptance the city became charged with the duty of administration of the trust in strict accord with the terms of the instrument creating the fund, . . . Their acts in this regard were, and are, only incidental to the execution of the legislative policy and purpose implied from the acceptance of the trust fund, and were not proper subjects of referendum.''

We think the ordinance in question declares the legislative policy of the city in connection with the acquisition of the street car line in question, and is, therefore, subject to referendum under the provisions of the city charter.

The judgment of the trial court is affirmed.

TOLMAN, C. J., HOLCOMB, FULLERTON, and MITCHELL, JJ., concur.