[No. 25982. Department One. January 24, 1936.]

E. M. NEILS et al., Respondents, v. THE CITY OF SEATTLE et al., Appellants.[1]

[1]Reported in 53 P. (2d) 848.

270

*A. C. Van Soelen, J. Ambler Newton,* and *John E. Sanders,* for appellants city of Seattle *et al.*

*Preston, Thorgrimson & Turner,* for appellants Hitt *et al.*

*Paul Lemargie, Smith & Matthews, Julian O. Matthews,* and *Elmer Goering,* for respondents.

STEINERT, J.—This action was brought by two taxpayers of the city of Seattle to enjoin the city from submitting to referendum an ordinance passed by its council and approved by the mayor. Other taxpayers intervened in the action and aligned themselves with the city in resisting the application for injunction. Upon a trial before the court, a decree was entered enjoining further proceedings on the petition for referendum. The defendant city and the intervening taxpayers have appealed.

The case arises out of matters connected with Seattle and Rainier Valley Railway Company, a corporation, which operates an electric street railway over certain streets in the city of Seattle. The franchise under which the railway company is now operating was originally obtained by Wm. R. Crawford from the city in 1907, under ordinance No. 15919, subsequently modified by other ordinances.

The franchise, in terms, provided that it should ex-

pire on December 31, 1934, and that, within ninety days after its expiration date, the grantee, his successors and assigns, should remove from the streets of the city all portions of their roadbed and appurtenances, and should put the surfaces of the streets in good condition for public travel.

On December 27, 1934, which was shortly before the date of expiration of the franchise, the city council, by ordinance No. 65136, granted the railway company a temporary permit authorizing it to use the streets for railway purposes during the month of January, 1935, and extending the time for removal of the roadbed and appurtenances.

Thereafter, the city council passed ordinance No. 65425, which was approved by the mayor on May 29, 1935. That ordinance granted the railway company a temporary permit to continue the use of the streets which it then occupied, for an indefinite length of time, but made the permit subject to revocation by ordinance at the pleasure of the city council. The ordinance also suspended, during the period of the temporary permit, the ninety-day removal provision above referred to. By its terms, the ordinance was not to become effective unless, within ten days after its approval, the railway company should, in writing, accept the privilege granted, subject to the terms, conditions and restraints thereby imposed. The company duly filed its written acceptance of the permit, with the conditions attached.

On August 26, 1935, the city council passed ordinance No. 65613, which the mayor approved on the following day. That ordinance is the one that the intervening taxpayers and others sought to have referred to popular vote. The ordinance contained a preamble consisting of several recitals, one of them being to the effect that it was the intention of the city council immediately to provide municipally owned transportation

facilities and service for the district then being served by the railway company.

The body of the ordinance contained five sections. The first section revoked the temporary permit granted under ordinance No. 65425. The second section required the railway company to remove all portions of its tracks, roadbed and appurtenances from all streets, avenues and public places in the city and to put the streets in as good condition for public travel as was contemplated under the original franchise ordinance. The third section provided that, if section two was not complied with, then, at the expiration of the ninety-day period, any property of the railway company within the streets, avenues, or public places of the city should be deemed, and was presently declared, to be an obstruction to travel and subject to summary abatement as a nuisance. The fourth section repealed ordinance No. 65425, *supra*. The fifth section provided that the ordinance should take effect thirty days from date of its passage and approval, if approved by the mayor; otherwise, it should take effect at the time that it should become a law under the provisions of the city charter.

Following the passage and approval of ordinance No. 65613, a referendum petition was filed with the city comptroller, requesting and demanding that the ordinance be submitted to a referendum vote for approval or rejection. The petition contained 15,707 signatures, which the comptroller was required to check, under the provisions of the city charter. This action was brought to enjoin further proceedings on the petition.

For the purposes of this case, it is conceded by respondents that the petition, if checked, would contain the names of a sufficient number of qualified voters to require a referendum vote.

This appeal involves only questions of law, the ultimate question being whether ordinance No. 65613, passed August 26, 1935, and revoking the temporary permit, is subject to referendum, under the provisions of the Seattle charter.

To arrive at an ultimate decision of this case, we must dispose of two questions: (1) Was the passage of ordinance No. 65613 a legislative act, or was it an administrative, executive, or ministerial act? (2) Was the authority which the council exercised in passing the act granted by Rem. Rev. Stat., § 8966 [P. C. § 678] (9), or by Rem. Rev. Stat., § 11082 [P. C. § 4635]? Unless the passage of the ordinance be held to be a legislative act done in pursuance of Rem. Rev. Stat., § 8966 (9), the ordinance is not subject to referendum.

■ For the purposes of this case only, and because of our conclusion upon the second question, we shall assume that the passage of ordinance No. 65613 was a legislative act. The ordinance would, therefore, ordinarily be subject to referendum, under the well-settled rule in this state that, if an act be legislative in character, the initiative or referendum may be invoked. *State ex rel. Harlin v. Superior Court,* 139 Wash. 282, 288, 247 Pac. 4; *State ex rel. Pike v. Bellingham,* 183 Wash. 439, 48 P. (2d) 602; *State ex rel. Leo v. Tacoma,* 184 Wash. 160, 49 P. (2d) 1113.

■ We shall, therefore, in the determination of this case, confine ourselves to the second question, that is, whether the city council, in passing ordinance No. 65613, exercised a power granted it by Rem. Rev. Stat., § 8966 (9), or a power granted it by Rem. Rev. Stat., § 11082. As already stated, unless the ordinance was authorized by Rem. Rev. Stat., § 8966 (9), it is not referable.

Rem. Rev. Stat., § 8966, enacted in 1890, confers upon *cities of the first class* certain enumerated

powers. Subdivision 9 of that section confers the power,

"To *authorize* or *prohibit* the locating and constructing of *any* railroad or street railroad in any street, alley or public place in such city, and to prescribe the terms and conditions upon which any such railroad or street railroad shall be located or constructed; . . ." (Italics ours.)

By Art. IV, § 18 (9), of the Seattle charter, the city council is empowered to exercise the authority granted to the city under Rem. Rev. Stat., § 8966 (9).

Rem. Rev. Stat., § 11082 (originally appearing as chapter 173, Laws of 1903, p. 364, and subsequently modified by chapter 99, Laws of 1907, p. 192), in so far as it is material here, reads as follows:

"*The legislative authority* of the city or town having control of any street or road . . . may grant authority for the construction, maintenance, and operation of *electric railroads or railways* . . . together with such poles, wires and other appurtenances upon, over, along and across any such public street or road and in granting such authority *the legislative authority* of such city or town . . . may prescribe the terms and conditions on which such railroads or railways and their appurtenances shall be constructed, maintained and operated upon, over, along and across such road or street, and the grade or elevation at which the same shall be maintained and operated. . . ." (Italics ours.)

It is important to note that, in § 8966 (9), the power is granted to the *city,* while in § 11082 the power is granted to the *legislative authority of the city,* as distinguished from the city in its corporate capacity. The distinction, in terms, between the two statutes might, upon a casual reading, escape notice, but upon that distinction rests the determination and decision of this case.

The power to grant franchises is a sovereign power,

resting in the state. It may be delegated by the state, but it is not within the powers of cities unless expressly delegated to them by the state. *State ex rel. Spring Water Co. v. Monroe,* 40 Wash. 545, 82 Pac. 888; *Dolan v. Puget Sound T., L. & P. Co.,* 72 Wash. 343, 130 Pac. 353.

In the exercise of its sovereign power, the state may withdraw from a municipality or from a board of public officers powers delegated to, or exercised by, them and redelegate such powers to another agency. *State ex rel. Webster v. Superior Court,* 67 Wash. 37, 120 Pac. 861, L. R. A. 1915C, 287, Ann. Cas. 1913D, 78; *Chicago v. O'Connell,* 278 Ill. 591, 116 N. E. 210, 8 A. L. R. 916; *McAneny v. Board of Estimate & Apportionment,* 232 N. Y. 377, 390, 134 N. E. 187, 191; *Cambridge v. Boston Elevated R. Co.,* 241 Mass. 374, 135 N. E. 313; *Worcester v. Worcester Consol. St. R. Co.,* 196 U. S. 539, 25 S. Ct. 327, 49 L. Ed. 591; *Pawhuska v. Pawhuska Oil & Gas Co.,* 250 U. S. 394, 39 S. Ct. 526, 63 L. Ed. 1054; 19 R. C. L. 730, § 35; 25 R. C. L. 1178, § 59.

When a power granted by the state to a municipality is enlarged or limited by a subsequent statute, the enlarged or limited power of the municipality takes effect from the date of the enlarging or limiting statute. *State ex rel. McMannis v. Superior Court,* 92 Wash. 360, 159 Pac. 383; *State ex rel. National Bank of Tacoma v. Tacoma,* 97 Wash. 190, 166 Pac. 66. This principle is founded upon Art. XI, § 10, of the state constitution, which authorizes any city having a population of twenty thousand or more inhabitants to frame a charter for its own government, subject, however, to the constitution and general laws of the state.

Rem. Rev. Stat., § 8966 (9), enacted in 1890, delegated to *cities* of the first class the power to authorize or prohibit the locating and constructing of

*any* railroad or street railroad in any street, alley or public place in such city, and to prescribe the terms and conditions upon which such railroad or street railroad should be located or constructed. Rem. Rev. Stat., § 11082, enacted in 1903 and modified in 1907, withdrew from cities, acting in their corporate capacity, the power to authorize the construction, maintenance and operation of *electric* railroads or railways, and to prescribe the terms and conditions on which *such* railroads or railways and their appurtenances should be constructed, maintained and operated, and conferred that power upon the *legislative authority* of the cities.

Section 11082, which is a general law, was in full force and effect when the railway company received its franchise. That section, relating to electric railroads and railways, therefore prescribed the source from which the franchise to the street railway company derived its authority.

A general law enacted by the legislature is superior to, and supersedes, all charter provisions inconsistent therewith. *State ex rel. Seattle v. Carlson,* 6 Wash. 250, 33 Pac. 428; *Tacoma Gas & Electric Light Co. v. Tacoma,* 14 Wash. 288, 44 Pac. 655; *Benton v. Seattle Electric Co.,* 50 Wash. 156, 96 Pac. 1033; *Ewing v. Seattle,* 55 Wash. 229, 104 Pac. 259; *Dolan v. Puget Sound T., L. & P. Co.,* 72 Wash. 343, 130 Pac. 353. Any charter provision, therefore, which has the effect of limiting or restricting a legislative grant of power to the legislative authority or other officer of a city is invalid.

██ The exact question presented in this case has been squarely decided, and the answer thereto is controlled, by the *Benton, Ewing,* and *Dolan* cases, just cited. In a fourth decision, *State ex rel. Walker v. Superior Court,* 87 Wash. 582, 152 Pac. 11, the doctrine of

those cases was limited to a particular class of utilities, by virtue of the particular statute involved, but it was, nevertheless, recognized as a principle applicable to that class.

In *Benton v. Seattle Electric Co.,* 50 Wash. 156, 96 Pac. 1033, the court construed the act now appearing as Rem. Rev. Stat., § 11082. It was therein held that the act vested in "the legislative authority" of the city the power to prescribe the terms upon which *electric* railroads and railways might be constructed, operated and maintained; and that the expression "legislative authority of the city" meant the mayor and city council. It was further held in that case that, although Art. IV, § 20, of the Seattle charter provided that every grant of a franchise should be subject to repeal, amendment or modification by the people through the initiative or referendum, nevertheless the city council was without power to submit to the voters for their ratification an ordinance granting a franchise, because the power to grant franchises was directly and specifically vested by the legislature in the *legislative authority of the city,* that is, the mayor and city council, and could not be delegated to the voters or others. In the opinion, also, the court took occasion to distinguish the case from that of *Hindman v. Boyd,* 42 Wash. 17, 84 Pac. 609, wherein was involved a charter amendment governing the manner of granting or amending franchises for gas, electric light, water, telephone and telegraph companies. The court pointed out that, in the *Hindman* case, there was no special statute of the legislature vesting power over such matters directly and specifically in the "legislative authority" of the city, such as there was in the case then at bar, and as there is in the case now before us.

In *Ewing v. Seattle,* 55 Wash. 229, 104 Pac. 259, injunction was sought to restrain the city council and

mayor from proceeding further under an ordinance granting a franchise to construct and operate a street railway upon certain streets in the city of Seattle. The basis of the complaint in that case was that the council had proceeded without right or power in the premises and contrary to the provisions of the city charter.

The fundamental question before the court was the same as the one before us here. The court said, on page 237 of the state report:

"This brings us to the question, Was the legislative authority of the city legally required to follow the charter provisions in determining to whom it would grant the franchise? We have seen that the legislature has directly conferred upon the legislative authority of the city, by the acts of 1903 and 1907 [Rem. Rev. Stat., § 11082], power to grant such franchises, and also power to *prescribe the terms and conditions on which such railroads or railways and their appurtenances shall be constructed, maintained and operated* . . .' If this legislative grant of power is superior to the limitations and restrictions contained in the freehold charter, then it is evident, by its plain terms, that the legislative authority of the city was not legally required to follow the charter method in determining to whom it would grant such franchise, but could lawfully exercise its own judgment upon that question. . . . While our constitution has reserved to the people of cities of the class to which Seattle belongs the power to frame and adopt charters for their own government, it also provides that such charters *'shall be subject to and controlled by general laws.'* And this court has repeatedly and uniformly held that where the legislature has enacted laws relating to such cities, or to the powers and duties of their officers, such laws supersede charter provisions in conflict therewith. (Citing cases.)"

And further, on page 240 of the state report:

"It having become the settled law of this state, by the construction repeatedly placed upon the constitu-

tion, that a general law enacted by the legislature is superior to and supersedes all freehold charter provisions inconsistent therewith, it becomes plain that, when the legislature, by the Laws of 1903 and 1907 [Rem. Rev. Stat., § 11082], gave to the legislative authority of the cities of the state the power to grant street railway franchises, and also the power to '*prescribe the terms and conditions on which such railways . . . shall be constructed, maintained and operated,*' that power cannot be limited or prescribed by freehold charter provisions.''

In *Dolan v. Puget Sound T., L. & P. Co.*, 72 Wash. 343, 130 Pac. 353, the city council had passed an ordinance granting a franchise to a street railway company to extend its lines upon one of the public streets of the city of Seattle. The ordinance specifically provided that it should not be construed to authorize the city to acquire any property in the public streets of the city theretofore constructed or located under any franchise previously granted. The city charter, Art. IV, § 20, provided that any grant of a franchise, right or privilege should be subject to the right of the council, or of the people through the initiative or referendum, to acquire by purchase or condemnation ''all the property of the grantee within the limits of the public streets.'' The action was brought to restrain the acceptance of the franchise by the street railway company, upon the ground that the ordinance was in contravention of the charter provision and was, therefore, void.

The court held that, although the ordinance conflicted with the charter provision, it was, nevertheless, valid, because the charter provision itself was invalid, under the holdings in the *Benton* and *Ewing* cases, *supra*. It was contended in that case that an act of 1911, relating to the organization and powers of cities of the first class, Laws of 1911, chapter 17, p. 54, had repealed

what is now Rem. Rev. Stat., § 11082, *supra,* and that, therefore, Art. IV, § 20, of the Seattle charter had been revived. But this court held that there was no repeal of § 11082, and that the above charter provision had not been revived.

We have, then, three successive decisions of this court to the effect that the power to grant franchises for electric street railways was vested by the legislature in the "legislative authority" of the city, meaning the city council and mayor, and not in the city acting in its corporate capacity.

In the fourth case above referred to, *State ex rel. Walker v. Superior Court,* 87 Wash. 582, 152 Pac. 11, an action was brought to prevent referendum of an ordinance of the city of Spokane granting a telephone franchise. It was held in that case that the franchise ordinance was subject to referendum, under the provisions of the city charter. But the court took particular pains to point out, in the opinion, that the power of the city with regard to *telephone* franchises flowed from a statute which gave that power to the *city,* whereas the power with reference to street railway franchises was conferred by statute upon the *legislative authority* of the city.

While the *Walker* case defines the limit of the doctrine of the *Benton, Ewing* and *Dolan* cases, it, nevertheless, recognizes the doctrine as applicable to, and controlling of, such cases as fall within it. The present case relates to electric street railways and comes squarely within the doctrine of those three cases, and not within the rule of the *Walker* case.

The appellants contend that Rem. Rev. Stat., § 11082, strictly interpreted, empowers the legislative authority of the city only to grant *formal franchises,* and does not empower it to meet temporary emergencies such as were provided for in ordinances Nos. 65136

and 65425, relating to conditions as they existed after the railway company's franchise had expired; and further, that § 11082 does not empower the legislative authority to *prohibit* the operation of street railways. Appellants contend that these two latter powers were granted by, and could be exerted only under the authority of, Rem. Rev. Stat., § 8966 (9) ; and that, therefore, the earlier statute was not repealed by the later one in so far as the power of the city, in its corporate capacity, to meet the emergency or to prohibit further operations of the railway was concerned.

But the power conferred by Rem. Rev. Stat., § 11082, was not limited merely to the granting of formal franchises. The power given is broad and comprehensive. The legislative authority of the city was empowered to grant authority for the construction, maintenance and operation of electric railroads or railways, and to prescribe the terms and conditions on which such railroads or railways and their appurtenances should be constructed, maintained and operated. The granting of the temporary permit after the expiration of the original franchise was an exercise of the power to prescribe the terms and conditions upon which the railway company could continue to operate for the time being, under the emergency presented, and was not inconsistent with the general laws. If the temporary permit was not given pursuant to § 11082, then the railway company could not have operated at all, because under Art. IV, § 20, of the Seattle charter, which is not superseded by, or in conflict with, § 8966 (9) of the statute, no franchise may be granted, renewed or extended beyond December 31, 1934. The ordinance revoking the temporary permit simply enforced the terms and conditions under which the permit had been granted, and terminated all rights of the railway company to further operate.

Appellants finally contend that ordinance No. 65613 by its terms evinces a public policy to provide municipally owned transportation facilities and service for the district now served by the railway company, and as such is subject to referendum, citing *State ex rel. Harlin v. Superior Court,* 139 Wash. 282, 247 Pac. 4.

With reference to the case just cited, it may be noted, first, that it affirms the doctrine laid down in the *Benton, Ewing,* and *Dolan* cases. On page 286 of the state report, it is said:

"We have heretofore held that, if the grant is to the legislative authority of the city, its action is not subject to the provisions of a city charter, for the effect thereof would be to limit the power conferred by statute. (Citing those cases.)"

It may also be noted that, in that case, the city council had duly enacted an ordinance providing for the purchase from Seattle and Rainier Valley Railway Company of its street railway system under the authority of Rem. Comp. Stat., §§ 9488 and 9213, which conferred such power upon the *corporate entity* of the city, and not upon the "legislative authority" of the city. Under the provisions of the city charter, unrestricted by the particular statutes there involved, the ordinance in that case was clearly subject to referendum. We have an entirely different situation here.

In any event, the ordinance in question does not *declare* a public policy. It is merely a presently-expressed intention, recited by way of preamble, and in no way commits the city to do the thing therein suggested. Whether the matter of actually and ultimately providing such transportation is subject to referendum, is not before us now, and does not call for decision by us.

In our opinion, § 11082 is applicable and controlling in this case. By its terms, the *legislative authority* of

the city, namely, the city council and mayor, have been vested with full and exclusive power to grant authority for the construction, maintenance and operation of electric railroads upon, over, along, and across the public streets of the city, and to prescribe the terms and conditions of such construction, maintenance and operation. The power thus conferred cannot be delegated by the grantee to others, nor can it be limited or restricted by any charter provision inconsistent therewith. The ordinance in question is not subject to referendum.

The decree is affirmed.

GERAGHTY and BEALS, JJ., concur.

MILLARD, C. J. (dissenting)—I cannot agree that Rem. Rev. Stat., § 11082 [P. C. § 4635], in anywise limits the power of referendum. The legislative power of the city of Seattle, as well as of the state, is primarily in the people. That being so, the ordinance in question is subject to referendum. Assuming that the authorities upon which the majority rely sustain their position, I am of the view that those should now be overruled, to the end that this opinion accord with more recent expressions of this court and be in harmony with the spirit and the letter of the state constitution and the charter of the city.

BLAKE, J., concurs with MILLARD, C. J.