[No. 38236.   En Banc.   December 30, 1965.]

THE STATE OF WASHINGTON, *on the Relation of* DAVID L. BOWEN *et al., Appellant,* v. CARL W. KRUEGEL, *Respondent.**

*George C. Butler,* for appellant.

*Rembert Ryals,* for respondent.

*Reported in 409 P.2d 458.

HALE, J.—Down river from the city of Richland, adjoining its easterly limits near where the Yakima river flows into the Columbia, is a community known as the "Richland Y." A majority of its inhabitants, hoping to make their district a part of Richland, petitioned for annexation, and the city council and mayor of Richland showed their approval by enacting an ordinance granting annexation. Many registered electors of Richland showed their disapproval of an annexation so consummated without a vote of Richland's electorate and petitioned the city council to repeal the ordinance of annexation or put it to a referendum in accordance with the terms of the Richland charter.

The controversy, dealing generally with relationships between the sovereign state and its first-class cities, evokes the particular question of whether cities of the first class may by charter effectively provide for the referendum election of an annexation ordinance in the absence of express statutory authority for such election.

The facts are not in dispute. Pursuant to RCW 35.13.020, a sufficient number of residents of the Richland Y, an unincorporated area contiguous to Richland, filed with the city council their petition that an annexation election be held within the Richland Y; they then filed this petition with the Benton County Commissioners. The city council, by resolution in compliance with RCW 35.13.020, notified the petitioners of its approval. Thereupon the county commissioners held an election within the Richland Y at which a majority of residents voted for annexation. On February 23, 1965, the city council enacted ordinance No. 332, annexing the Richland Y to and making it a part of the city of Richland.

Within 30 days of the effective date of ordinance 332, relators circulated a petition in Richland protesting the ordinance and to have it submitted to a vote of the Richland electors by referendum. Having obtained 2,077 qualified signatures on their referendum petitions, 649 more than necessary, relators presented the petitions to the city clerk to be canvassed and submitted to the city council. The city clerk brought matters to issue by declining to validate the

petitions and relators brought mandamus in the superior court to compel the city clerk specifically to ascertain whether the referendum petitions had sufficient valid signatures and to then transmit them to the city council for the calling of a referendum election.

From judgment of dismissal pursuant to a memorandum decision, the relators as electors and freeholders of Richland bring this appeal.

Relators rely upon provisions of the Richland charter which state that proposals to repeal any ordinance concerning matters within the legislative "as distinguished from administrative" powers of the city, may, upon compliance with certain enumerated conditions, be submitted by referendum to a vote of the people.[1] They contend that the city of Richland acted within its constitutional powers in providing for referendum elections of legislative ordinances; that annexation is a legislative act; and that article 1, § 1, of the state constitution declaring that all political power is inherent in the people upholds the power of referendum in this case.

■ We recognize that the enactment of an ordinance of annexation by a city council constitutes legislation within the legislative as distinguished from the administrative powers of the city, and, were this case not primarily one affecting sovereign state power, the mere stating of relators'

---

[1]The Richland City Charter, § 3.09(1), provides:

"The registered electors of the City may propose the repeal of any ordinance, or sections thereof, relating to matters within the legislative, as distinguished from administrative, powers of the City as a corporate entity. Notwithstanding the above classification, no ordinance, or sections thereof, shall be referred relating to the annual budget or the capital expense budget, making or repealing any appropriation, fixing the salaries or wages of officers or employees, authorizing or repealing the levy of taxes, or any repealing ordinance adopted by the Council in compliance with a referendum petition. The fact that the ordinance is already in effect shall not bar the referendum procedure."

The Richland City Charter, § 3.09(4) in relevant part provides:

"Within 30 days after receiving the referendum petition from the City Clerk, the Council shall repeal the ordinance, or sections thereof, or shall order it submitted to popular vote at a special election to be held within 60 days of receipt by the Council; . . . ."

contentions would be to affirm them. But the fundamental problem remains whether, in view of the state's paramount powers in annexation, effect shall be given to provisions of a city charter authorizing the referendum of annexation ordinances enacted pursuant to and in accordance with statute.

Defendant, on behalf of the city council, would resolve this problem on the theory that power of annexation to cities of the first class rests exclusively in the state; that the legislature can constitutionally delegate this power without losing it; and that, in the case of first-class cities, the legislature has delegated the power of annexation to the city council, reserving no powers to that end in the electorate.

That cities are creatures of the sovereign state may be seen from article 11, § 10, of the state constitution which says that the legislature shall provide for the incorporation and organization of cities and that all city charters shall be subject to and controlled by general laws. In RCW 35.22, the legislature has adopted a code for the organization and establishment of cities of the first class, affording them certain powers of government and capabilities as corporate entities. And though the power of referendum in annexation cases is nowhere prohibited, neither is such power anywhere conferred upon the city electorate. In neither RCW 35.22.280, enumerating numerous specific powers conferred by the state in first-class cities, nor in RCW 35.22.570, granting them the general powers customarily authorized, do we find a grant of the power sought to be exercised by the relators here, namely a power in the electorate to override by referendum election an annexation ordinance.

The power of annexation has been conferred by the state legislature on cities of the first class not in the specifically enumerated powers of RCW 35.22.280, but instead under RCW chapter 35.13 generally, and as in this case from Laws of 1961, ch. 282, p. 2279, which appears to be a substantial amendment to but likewise re-enactment of many of the provisions of RCW chapter 35.13.

The residents of the Richland Y petitioned for annexation under RCW 35.13.020, Laws of 1961, ch. 282 § 7, p. 2283,

which calls for the first of two legislative actions by the legislative body of the city, *i.e.*, expressing *inter alia* its approval or disapproval by *resolution*. They then sought to complete annexation by following the procedures described in RCW 35.13.100, Laws of 1961, ch. 282, § 17, p. 2287, which calls for the second and final legislative action of the city's *legislative* body, *i.e.*, adoption of an *ordinance* of annexation.

█ That the legislature intended to confer powers of annexation on the city council where the legislation refers to *resolutions* and the council and mayor together where the statute refers to *ordinances* and not in the freeholders or electorate, may be seen in the legislature's employment of the term *legislative body* in Laws of 1961, ch. 282, p. 2279, the statute under which these annexation procedures were undertaken.

Laws of 1961, ch. 282, § 1, p. 2279, says that the *legislative body* of a city or town may initiate annexation by resolution asking the county commissioners to hold an election in any contiguous unincorporated territory. Section 2, p. 2280, says, *inter alia,* that the *legislative body* of a city or town may approve or disapprove an annexation provision brought by others. Section 7, p. 2283, provides that petitions for annexation shall be filed with the *legislative body* of the town to which annexation is proposed, and thrice more in this section the city council is referred to as the *legislative body*. Again, in § 17, p. 2287, the city clerk is directed to transmit to the *legislative body* of the city at its next regular meeting the findings of the county commissioners relating to annexation. Thrice more in this section we note the term *legislative body,* and subsequently in §§ 18 and 19 the city council is unmistakably identified as the *legislative body*.

The language used by the legislature in prescribing the particular methods of annexation employed by the residents of the Richland Y as set forth in RCW 35.13.020 and RCW 35.13.100, each section being an integral part of Laws of 1961, ch. 282, p. 2279, seems peculiarly adapted to vesting the ultimate power of annexation in such cases with the city council and not in the electorate or the city as a cor-

porate entity. We hold, therefore, that the term *legislative body* as used in Laws of 1961, ch. 282, p. 2279, RCW chapter 35.13, means the city council, when referring to the power to adopt resolutions concerning annexation, and the city council and mayor, when speaking of ordinances of annexation.

■ Having thus determined that the legislature delegated in part its powers of annexation to the city council and mayor and not to the city electorate, what effect ought be given to provisions of a city charter providing for referendum elections on all matters within the legislative powers of the city? If the power to annex lies exclusively with the state, and cities can take such steps only as may be delegated to them by statute, then it follows that, unless the statutes in granting the power of annexation additionally authorize a referendum for annexation ordinances, provisions of the city charter purporting to do so would necessarily be without effect. A municipality cannot, without permission of the parent sovereign, assume powers reserved by the state to itself; to do so would constitute a trespass on the sovereign power of the state. We have alluded to this doctrine in a number of cases relating to the granting or termination of municipal franchises.

*Neils v. Seattle,* 185 Wash. 269, 53 P.2d 848 (1936), probably the most notable expression of this idea, concerned the revocation of an electric railway franchise by ordinance of the Seattle City Council. A referendum petition was circulated and filed with the city council to have this revoking ordinance put to a vote of the people. Issues similar to the instant case joined when taxpayers brought suit to enjoin the city from submitting the ordinance to a referendum election.

Three pertinent statements stem from *Neils v. Seattle, supra,* each being by analogy appropriate here:

1. The power to grant franchises is a sovereign power of the state, vesting in the state's municipal corporations by express delegation from the state.

2. If the state vests a part of its sovereign power in the *legislative authority* of the city, this means the mayor and

city council, and is not a delegation of like powers to the voters or others.

3. A general law enacted by the legislature is superior to and supersedes all charter provisions in conflict therewith.

We would read the term *legislative body* as employed in the annexation statutes involved in the instant case to be a narrower and more precise description of the council and mayor than *legislative authority of the city* was held to signify in *Neils,* yet we there found that the latter expression too, meant the city council and mayor.

Again, in *State ex rel. Haas v. Pomeroy,* 50 Wn.2d 23, 308 P.2d 684 (1957), we said that if the grant of power from the legislature is to the *legislative authority of the city,* the city council's actions in exercising the power by ordinance is not subject to referendum, but if the grant of power is to the *corporate entity of the city,* the referendum may then be invoked:

> This court has repeatedly recognized the distinction between a grant of authority by the legislature to a city as a corporate entity and to its legislative and other corporate authorities. For cases where a grant of power was to the city as a corporate entity, see *State ex rel. Harlin v. Superior Court* (1926), 139 Wash. 282, 286, 247 Pac. 4; *State ex rel. Walker v. Superior Court* (1915), 87 Wash. 582, 589, 152 Pac. 11. For cases where the grant of power was to the legislative authority of the city, see *Neils v. Seattle* (1936), 185 Wash. 269, 274, 53 P. (2d) 848; *Dolan v. Puget Sound Traction, Light & Power Co.* (1913), 72 Wash. 343, 346, 130 Pac. 353; *Ewing v. Seattle* (1909), 55 Wash. 229, 240, 104 Pac. 259; *Benton v. Seattle Electric Co.* (1908), 50 Wash. 156, 163, 96 Pac. 1033.

And then, ruling in *Haas* that an ordinance changing consumer rates of a municipally owned water system was not subject to referendum, we said:

> The grant of power being to the corporate authorities and not to the city as a corporate entity, an ordinance which does no more than fix rates is not subject to the referendum provisions of the city charter, for the effect thereof would be to limit the power conferred by statute.

The sovereign power in a state to create, organize and classify cities includes the power to enlarge their limits by

annexation. And, because the greater includes the lesser, the state may delegate the power of annexation to the cities and prescribe the mode, method and conditions by and under which the delegated authority may be exercised by the cities. But the ultimate power of annexation, like the power to grant franchises, rests exclusively in the state.

We said this in *Wheeler School Dist. No. 152 v. Hawley*, 18 Wn.2d 37, 43, 137 P.2d 1010 (1943), "In the absence of specific constitutional inhibition, the legislature has plenary power over municipal corporations." and affirmed the rule that not only may the legislature originally fix the limits of a municipal corporation but it may, unless restrained in the constitution, annex or authorize the annexation of contiguous or other territory without the consent and even against the remonstrance of the majority of persons in either the annexed territory or the corporation to which it is being joined. 1 Dillon, Municipal Corporations §§ 355, 357 (5th ed.); 2 McQuillan, Municipal Corporations §§ 7.10, 7.13 (3d ed.); *State ex rel. Board of Comm'rs v. Clausen*, 95 Wash. 214, 163 Pac. 744 (1917); *State ex rel. Snell v. Warner*, 4 Wash. 773, 31 Pac. 25 (1892).

No power of annexation existing in the cities except that delegated to it by the state, any annexation undertaken by the city must be in the manner prescribed and pursuant to the conditions imposed by the legislature. The statutes under which annexation is sought by the residents of the Richland Y and the city council and mayor contain no provisions that the annexation be submitted to a vote of the people in the annexing city. The electorate of Richland, having no power to vote on an annexation brought under RCW 35.13.020 and RCW 35.13.100, cannot by city charter provide for such an election, for in doing so they would be trespassing upon and curtailing the sovereign power of the state to make annexation.

Judgment is, therefore, affirmed.

ALL CONCUR.