[No. 13492.   Department Two.   April 11, 1917.]

BRUCE SHORTS, *Appellant*, v. THE CITY OF SEATTLE, *Respondent*.[1]

STATUTES — CONSTRUCTION. . Notwithstanding the public utilities act must receive a strict construction, the legislative intention, when apparent, must prevail.

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—INDEBTEDNESS—AUTHORITY—SUBMISSION TO VOTE. The city charter of the city of Seattle, art. 4, § 18, providing that the city council shall have power to provide for the acquisition of water works, authorizes the council to provide therefor by ordinance, within the meaning of subd. 2 of Rem. Code, § 8005, authorizing a city to acquire a public utility or make any betterments thereto without submitting the same to a vote of the people, where, in the city charter, adopted by a vote of the people, an article or provision had been adopted authorizing the city council to provide by ordinance for acquiring a utility.

SAME. It is not essential that the charter provision contain the words "by which no general indebtedness is to be incurred by such city or town" as found in the statute, where, as a matter of fact, no general indebtedness is to be incurred in acquiring the utility.

SAME—PUBLIC IMPROVEMENTS — BONDS — CONDITIONS — STATUTES. Where the city charter relating to municipal water bonds contains no limitations as to the maturity of bonds payable solely from the earnings of public utilities, the city council has power to fix the date

[1]Reported in 164 Pac. 239.

of their maturity, under Rem. Code, § 8008, providing that such bonds shall be payable at such times and places as the council shall determine.

CONSTITUTIONAL LAW—LEGISLATIVE POWERS—PUBLIC POLICY. The question of public policy in the matter of the issuing of municipal bonds for acquiring public utilities is a legislative question pure and simple.

Appeal from a judgment of the superior court for King county, Jurey, J., entered December 28, 1916, dismissing an action for an injunction, upon sustaining a demurrer to the complaint. Affirmed.

*Ballinger, Battle, Hulbert & Shorts*, for appellant.

*Hugh M. Caldwell* and *Robert H. Evans*, for respondent.

ELLIS, C. J.—The plaintiff, a resident voter and taxpayer of the city of Seattle and a consumer of water furnished by the city through its municipal water plant, brought this action to enjoin the issuance, sale and delivery by the city of "Special fund water bonds" totaling $60,000. Plaintiff sets forth at length the acquisition in 1890 of the city's original water supply system; traces its development through many additions and extensions to 1895, when it was changed from a steam pumping plant to a gravity system known thereafter as the "Cedar River Water Supply System," details the making of further additions prior to 1916; and points out that the original acquisition and subsequent additions and extensions and the issuance of securities, whether general or special fund bonds, to pay for the same were all submitted to and authorized by the qualified voters of the city. It is then alleged, in substance, that in November, 1916, the city council determined to make further additions to and betterments and extensions of its water supply system, and to that end passed ordinance No. 36,630. This ordinance, after setting forth the proposed additions, betterments and extensions, provides that, to pay the costs thereof, the city will issue bonds in the sum of $60,000, maturing

serially, $12,000 six years after date, and a like amount annually thereafter, all bearing interest at the rate of five per cent per annum, payable semi-annually, both principal and interest being payable solely from a special fund created by ordinance, to be known as "Cedar River Water Supply Fund of Seattle, Series No. 4;" that thereafter the city, by resolution of its council, called for bids on the bonds; that Morris Brothers, Inc., made the best offer for the bonds, and that its bid was accepted by the city.

It is further alleged that ordinance No. 36,630 does not authorize or provide that the system or plan specified and adopted in the ordinance shall be submitted to the qualified voters of the city, nor does it provide for the submission to the voters of the proposition of the issuance of the bonds; that neither of these propositions has ever been, in whole or in part, submitted to the qualified voters of the city, and that the city claims the right and authority to issue the bonds for the purposes mentioned without submitting the matter to such voters for their ratification or rejection.

A demurrer to the complaint was sustained. Plaintiff abiding by his pleading, the action was dismissed. He appeals.

Appellant's dominant contention is that the issuance of these bonds is *ultra vires* of the city, in that neither the plan of the proposed additions to the water system nor the proposition to issue the bonds was ever submitted to the qualified voters for ratification or rejection, as required by the public utilities act of 1909, which, as amended in particulars here immaterial, is embodied in sections 8005 to 8010, inclusive, of Rem. Code. No question of constitutional power is presented. It is conceded that these bonds, being payable, both principal and interest, solely from the earnings of the public utility, would not constitute an "indebtedness" of the city within the meaning of the state constitution touching the debt limit. *Uhler v. Olympia*, 87 Wash. 1, 151 Pac. 117, 152 Pac. 998. The sole question is one of statutory power.

The material provisions of the governing statute are found in Rem. Code, § 8006, as follows:

"Whenever the city council or other corporate authorities of any such city or town shall deem it advisable that the city or town of which they are officers shall purchase, acquire or construct any public utility mentioned in section 8005 hereof, or make any additions and betterments thereto or extensions thereof, the common council or other corporate authorities shall provide therefor by ordinance, which shall specify and adopt the system or plan proposed, and declare the estimated cost thereof as near as may be, and the same shall be submitted for ratification or rejection to the qualified voters of said city at the general or special election, except in the following cases where no submission shall be necessary:

"(1)  When the work proposed is an addition to, or betterment of, or extension of, or an increased water supply for, existing waterworks, or an addition, betterment or extension of an existing system or plant of any other public utility mentioned in section 8005 hereof, for which no general indebtedness is to be incurred by such city or town: Provided, such undertaking shall have been authorized by the common council of such city or town prior to July 1, 1910; or

"(2)  Where in any charter of any city or town in the state of Washington heretofore or hereafter adopted by a vote of the people, an article or provision has been adopted authorizing the city council or other corporate authorities of such city to provide by ordinance for acquiring, opening or operating any of said public utilities, for which no general indebtedness is to be incurred by such city or town . . ."

Then follow certain general provisions which, as pointed out by the codifier, should be set off in a separate paragraph. They cannot be construed as a part of or as affecting subdivision 2 as above quoted without making the section as a whole self-contradictory, a course which no court can soundly pursue where any other reasonable construction is possible. *Rosenoff v. Cross, ante* p. 525, 164 Pac. 236. The general provisions following those above quoted are plainly intended to apply to cities and towns

lacking the charter powers mentioned in subdivision 2. This seems to be admitted, since appellant concedes that the crux of the issue lies in the question whether or not the charter of the city of Seattle contains any provisions such as contemplated by that subdivision.

The fourteenth subdivision of § 18, art. 4 of the Charter of Seattle, as adopted by the people and subsequently amended by a vote of the people in 1906, so far as here pertinent, reads as follows:

"The City Council shall have power by ordinance: . . .
"Fourteenth.    Acquisition, Erection and Operation of Water Works; Sale of Water, Free Water:   To provide for erecting, purchasing or otherwise acquiring, as the sole and exclusive property of the city, water works, within or without the corporate limits of the city, to supply said city and its inhabitants with water for any and all purposes, and to fix, alter, regulate and control the use and price of the water so supplied;"

Appellant's position seems to be that, inasmuch as the public utility act must receive a strict construction, the city charter must not only confer upon the city council the authority by ordinance to acquire and operate water works, but must confer that authority in the terms of the statute. It must be conceded that the public utility act should receive a strict construction.   Our own decisions amply sustain that principle.   But even a strict construction must be a reasonable construction.   Under any rule of construction, whether strict or liberal, the legislative intention, when clearly apparent, must prevail.   We think it may be soundly postulated that the legislators were concerned with the fact of the charter authority to the council to act by ordinance rather than the mere formula by which that authority might be expressed. Subdivision 2 of § 8006, above quoted, expressly applies to charter provisions "heretofore" as well as "hereafter" adopted.   There is nothing to indicate that the legislators had in mind any specific then existing charter provision of any particular city or town, and adopted its exact verbiage

as the only form of expression intended to be validated. Yet if such is not the case, appellant's rule of strict construction would convict the legislature of intending to make the power of cities theretofore possessing charter authority to proceed by ordinance dependent upon a mere fortuitous coincidence. We decline to assume an intention so capricious. The above quoted provision of the Seattle charter clearly authorizes the city council by ordinance "to provide for erecting, purchasing or otherwise acquiring, as the sole and exclusive property of the city, water works, . . . to supply said city and its inhabitants with water" etc. Under no reasonable rule of construction, whether strict or liberal, can it be said that the authority so conferred is of a different nature or is less comprehensive than that prescribed in the statute.

Some stress is laid upon the fact that the charter provision does not contain the words "for which no general indebtedness is to be incurred by such city or town," as found in the statute. As to this last provision, it seems plain that it is the *fact* that no general indebtedness is to be incurred which invokes the power conferred by both charter and statute, not the mere *recital* of that fact in the charter. This provision is obviously intended as a limitation upon any charter power to acquire, own and operate, not as an essential recital in the charter itself to confer that power. We are convinced that, since the city charter specifically authorizes the city council by ordinance to acquire, own, and operate a water system such as the city long has had, the city has power, under the plain terms of the statute, to provide by ordinance for making additions, extensions, and betterments to that system, and to issue and sell bonds payable solely from the income to be derived from the system to pay for the same without submitting either proposition to popular vote for ratification.

It is next argued that the bonds here involved do not conform in their dates of maturity to the requirements of subd. 15, of § 18, of art. 4, of the city charter, which, among other

things, provides that public utility bonds issued to pay for the utilities in that subdivision enumerated shall be payable "at such times as may be agreed upon between the tenth and fortieth years after their date of issuance." It is a sufficient answer to say that subdivision 15 relates only to municipal light, power and heating plants, street railways, telephones, ferries, docks and water power sites, and has no application to water works; while subd. 14, of § 18, of art. 4, relates only to municipal water works. The latter subdivision under which the city is proceeding contains no provision as to the maturity of any bonds to be issued in payment for such water works. The section of the public utility act, Rem. Code, § 8008, specifically relating to special fund bonds payable solely from the earnings of public utilities, provides that such bonds shall be "executed in such manner and payable at such times and places as the common council or other corporate authorities of such city or town shall determine." The dates of maturity of such bonds is thus distinctly left to the discretion of the common council or other corporate authorities of the city. The dates fixed by the council in this instance, therefore, impinge no provision either of charter or statute.

Finally, it is urged that the issuance of these bonds should be enjoined on grounds of public policy. We shall not pursue in detail the arguments advanced in this connection. It should suffice to say that we know of no better criterion by which to determine any given question of public policy than the utterances of the state legislature upon that question. As we have seen, the legislature, acting within its constitutional powers, has authorized the issuance of bonds of this character in the manner in which and for the purpose for which these bonds are to be issued. The question of policy involved is a legislative question pure and simple.

The judgment is affirmed.

MOUNT, PARKER, and FULLERTON, JJ., concur.