[No. 13941.  Department Two.  April 11, 1917.]

BRUCE SHORTS, *Appellant*, v. THE CITY OF SEATTLE, *Respondent*.[1]

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—PUBLIC INDEBTEDNESS—BONDS—STATUTES.  A charter provision authorizing the acquisition of a public utility is not invalid because its provisions are not couched in the same terms as found in Rem. Code, § 8006, subd. 2, where it cannot be said that the charter does not meet the requirements of the statute.

SAME.  The provisions in a city charter that public utility bonds shall be payable serially in such amounts and at such times as may be agreed upon, between the tenth and fortieth years after the date of issuance, conflicts with the public utilities act, Rem. Code, § 8008, which provides that the bonds shall be executed in such manner and payable at such times as the common council shall determine; and this discretion, having been vested in the city council, cannot be controlled or circumscribed by the charter.

Appeal from a judgment of the superior court for King county, Jurey, J., entered December 28, 1916, dismissing an action for an injunction, upon sustaining a demurrer to the complaint.  Affirmed.

*Ballinger, Battle, Hulbert & Shorts*, for appellant.

*Hugh M. Caldwell* and *Robert H. Evans*, for respondent.

ELLIS, C. J.—Plaintiff, a resident voter and taxpayer of the city of Seattle and a consumer of electric energy furnished by the city from its municipal light and power plant, in this action seeks to enjoin the issuance, sale and delivery of $390,000 special fund light bonds which the city proposes to issue.  Plaintiff sets forth at length the original acquisition of the city's light and power plant, details the making of various additions thereto prior to 1916, and the issuance of general bonds to pay therefor, and points out that the original acquisition and subsequent additions and extensions and the issuance of such bonds were all submitted

[1]Reported in 164 Pac. 241.

to and authorized by the qualified voters of the city.   It is then alleged that, in November, 1916, the city, deeming it advisable to make further additions to and betterments and extensions of such plant, passed ordinance No. 36,760, which, after setting forth the proposed additions, betterments, and extensions, describing the plan and estimating the cost thereof, provides that, to pay for the same, the city shall issue and sell its negotiable five per cent bonds in amount not exceeding $390,000, payable in equal annual amounts beginning six years and ending twenty years after their date, and provides that both principal and interest shall be payable solely from a special fund created by the ordinance to be called "Municipal Light Extension Fund of Seattle, Series J." It is further alleged that neither the plan for making such additions, betterments and extensions, nor the proposal to issue the bonds in payment therefor has ever been submitted to the qualified voters of the city by any other ordinance, and that no provision for such submission is made in this ordinance, and that the city is proceeding to issue and sell these bonds without any authorization by vote of such qualified electors, and will do so unless enjoined.

A demurrer to the complaint was sustained.   Plaintiff electing to stand upon his pleading, the action was dismissed. He appeals.

It is first contended that the city is proceeding without power in that neither the plan of the proposed additions nor the proposal to issue and sell the bonds has ever been authorized by a vote of the qualified electors.   The incurring of no general indebtedness being proposed, no question of constitutional power is involved.   The sole question is one of statutory power.

The first section of the public utilities act of 1909, as amended in 1913, Rem. Code, § 8005, authorizes incorporated cities and towns to construct, purchase, acquire, add to, maintain and operate, among other public utilities, municipal light and power plants, such as that here involved.

Section 2 of the same act, Rem. Code, § 8006, provides that the system or plan proposed and the estimated cost of any such utility shall be provided for by ordinance and submitted for ratification or rejection to the qualified voters except in two cases "where no submission shall be necessary." With the first of those cases we are not concerned. The second, as found in subd. 2 of § 8006, is as follows:

"Where in any charter of any city or town in the state of Washington heretofore or hereafter adopted by a vote of the people, an article or provision has been adopted authorizing the city council or other corporate authorities of such city to provide by ordinance for acquiring, opening or operating any of such public utilities, for which no general indebtedness is to be incurred by such city or town. . . ."

Then follow certain provisions applicable to cities lacking the charter authority above mentioned. The section closes with a provision obviously intended to cover all cases whether the given proposition has been adopted by vote under the general provisions, or by the city council or other corporate authorities solely by ordinance as provided in subdivision 2 above quoted. It is as follows:

."Whenever a proposition has been adopted as aforesaid or in the cases mentioned in subdivisions first and second of this section where no submission shall be necessary the common council or other corporate authorities of such city or town shall have power to proceed forthwith to purchase, construct and acquire the public utility contemplated or to make additions, betterments and extensions thereto and to make payment therefor as hereinafter provided in section 8007 and section 8008."

Section 8008, which has not been amended since its enactment in 1909, among other things provides:

"Whenever the common council or other corporate authorities of any such city or town shall be authorized to exercise any of the powers conferred by section 8005 hereof without submitting any proposition in subdivision first and second of section 8006 hereof, the common council . . .

shall have power to create a special fund or funds for the sole purpose of defraying the cost of such public utility or addition, betterment or extension thereto, . . . and to issue and sell bonds or warrants bearing interest not exceeding six per centum per annum, payable semi-annually, executed in such manner and payable at such times and places as the common council or other corporate authorities of such city or town shall determine, but such bonds or warrants and the interest thereon shall be payable only out of such special fund or funds."

The fifteenth subdivision of § 18 of article 4 of the city charter of Seattle was adopted by a vote of the people in March, 1912. It contains provisions as follows:

"The city council shall have power by ordinance and not otherwise: . . .

"To construct, condemn and purchase, purchase, acquire, add to, maintain and operate, within or without the limits of the city, works, plants and facilities for the purpose of furnishing the city and the inhabitants thereof, and any other person, with gas, electricity and other means of power and facilities for lighting, heating, fuel and power purposes, public and private, with full authority to regulate and control the use, distribution and price thereof, together with the right to handle and sell, or lease, any meters, lamps, motors, transformers, and equipment for accessories of any and every kind, necessary and convenient for the use, distribution and sale thereof; to authorize the construction of such plant or plants by others for the same purpose, and to purchase such gas, electricity or power from others, either within or without the city, for its own use, and for the purpose of selling to its inhabitants and other persons doing business within the city, and to regulate and control the use and price thereof; . . . to acquire by purchase or condemnation an adequate water power supply and site and to construct, operate and maintain an electric power and light plant and system for furnishing power and light for industrial, individual and municipal uses; and to provide and secure payment therefor in whole or in part by net earnings therefrom, or by general bonds of the City of Seattle bearing interest not to exceed five per cent per annum, sold to the highest bidder and for not less than par, the principal of which shall

be payable serially in such amounts and at such times as may be agreed upon between the tenth and fortieth years after their date of issuance, or by any ways and means now or hereafter allowable by law, and to do anything necessary or proper in order to carry out the foregoing purpose; provided, however, that no public utility shall be purchased, acquired or constructed, nor any addition or betterments thereto or extensions thereof be made, for which a general indebtedness is to be incurred by the city, unless the council shall provide therefor by ordinance, which shall specify and adopt the system or plan proposed, and declare the estimated cost thereof, as near as may be, nor shall any public utility or plant be sold unless the council shall provide therefor by ordinance, which ordinance shall specify the terms and conditions of any such sale, and neither such purchase nor such sale shall be made unless the same shall be submitted for ratification or rejection to the qualified voters of the city at a general or special election, and unless such proposition shall be adopted and assented to by three-fifths of the qualified voters of the city, voting thereon at said election."

Appellant contends that, because the authority conferred upon the city council by this provision is not couched in the same terms as found in the statute above quoted (Rem. Code, subd. 2 of § 8006) it is insufficient to invoke the power granted by the statute without submitting the plan of the proposed additions, the estimated cost thereof, and the question of issuing the bonds in payment therefor to the qualified voters. We find no merit in this contention. Under no reasonable construction, however strict, which can be given to both the statute and the charter provisions can it be said that the latter do not meet the requirements of the former. See the companion case touching proposed additions to Seattle's water system. *Shorts v. Seattle, ante* p. 531, 164 Pac. 239.

But it is urged that the bonds are invalid because they do not conform to the above quoted charter provision in their periods of maturity. It will be noted that the ordinance providing for the issuance of the bonds makes them mature in

annual installments running from six to twenty years after their date, while the quoted subdivision of the charter relating to bonds issued for the purpose here involved provides that:

". . . the principal . . . shall be payable serially in such amounts and at such times as may be agreed upon between the tenth and fortieth years after the date of issuance. . . ."

This particular provision of the charter is, however, in conflict with the general law of the state touching the same subject. Section 8008 of the public utilities statute above quoted specifically relates to special fund bonds such as these, payable solely from the earnings of the public utility. It provides that such bonds shall be "executed in such manner and payable at such times and places as the common council or other corporate authorities of such city or town shall determine." The fixing of the maturity of the bonds is thus distinctly left to the discretion of the common council or other corporate authorities of the city. That discretion, being vested in the council by general state law, cannot be controlled or circumscribed by any charter provision. This, as a governing principle in such cases, is now too thoroughly established by the decisions of this court to be open to question. *Ewing v. Seattle*, 55 Wash. 229, 104 Pac. 259; *Benton v. Seattle Elec. Co.*, 50 Wash. 156, 96 Pac. 1033; *Dolan v. Puget Sound Traction, Light & Power Co.*, 72 Wash. 343, 130 Pac. 353.

The demurrer to the complaint was properly sustained. The judgment is affirmed.

MOUNT, FULLERTON, and PARKER, JJ., concur.