[No. 14668. Department One. July 30, 1918.]

U. G. MOORE, *as Receiver etc., Respondent,* v. FREMONT
STATE BANK, *by W. E. Hanson, as State Bank
Examiner, Appellant.*[1]

BANKS AND BANKING—POWERS—PURCHASE OF STOCK — STATUTES.
Banking corporations may purchase and hold stock in general cor-
porations; in view of Laws 1905, p. 51 (Rem. Code, §3684), author-
izing corporations generally to purchase and hold stock in other
corporations, which was not impliedly repealed, except as to cer-
tain classes named, by subsequent legislation, Laws 1907, p. 518,
§ 15 and its amendments (Rem. Code, §§ 3290, 3292, and Laws 1917,
p. 271) prohibiting a banking corporation from holding its own
stock or the stock of any other banking corporation, excepting the
stock of Federal Reserve banks and trust companies.

APPEAL—DECISION—AFFIRMANCE—EXTENDING TIME FOR PAYMENT.
Upon appeal in good faith from a judgment extending to appellant
a privilege provided payment was made within a specified period,
which expired pending appeal, affirmance of the judgment will be
with an extension of time for exercising the privilege.

Appeal from a judgment of the superior court for
King county, Jurey, J., entered September 11, 1917,
upon findings in favor of the plaintiff, in an action on
contract, tried to the court. Modified.

*Hugh C. Todd* and *M. M. Richardson,* for appellant.
*Bell & McNeil* (*L. H. Legg,* of counsel), for respond-
ent.

FULLERTON, J.—On August 1, 1910, the Fremont
State Bank, a banking corporation organized under the
laws of the state, entered its name as a subscriber to
five shares of stock in a corporation then in the process
of formation, afterwards organized and known as the
Woodland General Hospital, the subscription calling
for a payment of $500. The hospital became insolvent
some time in the year 1916, and the respondent Moore

[1]Reported in 173 Pac. 1089.

was appointed as its receiver. The bank became insolvent in January, 1917, and was taken in charge by the state bank examiner for liquidation. The present action was begun to recover upon the subscription. The bank examiner on behalf of the bank defended on the grounds, first, that the subscription was *ultra vires* the bank and void; and, second, that the bank had been relieved of the obligation through an agreement with the hospital by which it had procured another to take over the subscription and assume the obligation. The cause was tried by the court sitting without a jury, and resulted in a judgment in favor of the receiver of the hospital. The bank examiner appeals.

The appellant urges in this court the contentions made in the court below. He invokes the rule, generally announced by the courts, that a banking corporation, in the absence of express statutory authority, may not traffic or deal in the capital stock of another corporation, and argues that there is no such express statute in this state. To an understanding of the question, a brief review of the statutes and of this court's holdings thereon is necessary.

Prior to the meeting of the legislative assembly of 1907, there was no special statute relating to the organization of banking corporations. Such corporations were formed under the general incorporation laws of the state. While these general laws contained provisions applicable to banking corporations not applicable to corporations of other characters, such as, for example, that banking corporations must have a capital stock not less than a minimum sum named, three-fifths of which was required to be paid in, and each stockholder was made to assume a liability not imposed upon stockholders of other corporations, the manner of organization and the statutory enumeration of corporate powers were the same in each. With the stat-

utes in this condition, this court held that it was against the public policy of the state to permit one corporation to subscribe for or deal in the corporate stock of another corporation. *Denny Hotel Co. v. Schram,* 6 Wash. 134, 32 Pac. 1002, 36 Am. St. 130; *Parsons v. Tacoma Smelting & Refining Co.,* 25 Wash. 492, 65 Pac. 765.

At the legislative session following the latter of these decisions, a statute was enacted granting to corporations the powers which the court denied them. The act was broad in its terms. It provided that:

"Any corporation heretofore or hereafter organized under the laws of this state or under the laws of any other state or territory of the United States and doing business in this state shall have power and authority to subscribe for, acquire by purchase or otherwise and to own, hold, sell, assign and transfer shares of the capital stock of any other corporation and by its duly authorized officer or proxy to vote such shares at any and all stockholders' meetings of the corporation whose shares are so held, and to have and exercise all the rights, powers and privileges of any other stockholder, except that such corporate owner cannot be a member of the board of trustees." Rem. Code, § 3684.

The act also validated "all existing holdings by any such corporation in the shares of the capital stock of any other corporation." Laws 1905, p. 51.

The first of the acts relating specially to the organization of banking corporations was enacted in 1907. Laws 1907, p. 518. The act need not be outlined here. It is sufficient to say that it contains no direct provision withdrawing banking corporations from the operation of the act of 1905, and that there is nothing in its provisions that can be construed as impliedly so doing. On the contrary, in so far as the subject is touched upon at all, the implication is the other way. In § 15 of the act, it is provided that no bank shall be the pur-

chaser of its own stock, or any part of it, as security for loans; an implied admission, it would seem, that it could lawfully purchase stock in other corporations.

The act of 1907 was amended in certain particulars in 1909. Laws 1909, p. 692 (Rem. Code, § 3290 *et seq.*). The only change made in § 15 was to add thereto the sentence, "no bank shall subscribe for or purchase the stock of any other banking corporation." The act has been added to and amended by later sessions of the legislature, particularly by the sessions of 1915 and 1917. Laws 1915, p. 126 (Rem. Code, § 3292 *et seq.*); Laws 1917, p. 271. In both of these acts the provisions of § 15 of the act were remodeled, the first excepting from the prohibition against the purchase of bank stock the stock of Federal reserve banks, and the second adding to the prohibition stock in trust companies. Neither, however, contains any prohibition against the purchase of the capital stock of corporations other than those specifically enumerated.

The constitutionality of the act of 1905 was sustained by this court in the case of *State ex rel. McIntosh v. Superior Court*, 56 Wash. 214, 105 Pac. 637. There can be no question that the act was as applicable to banking corporations as it was to other corporations. The effect of the act was to change the public policy of the state from that which the court had theretofore declared it to be to an opposing policy. This was within the powers of the legislature. As we said in *Shorts v. Seattle*, 95 Wash. 531, 164 Pac. 239:

"We know of no better criterion by which to determine any given question of public policy than the utterances of the state legislature upon that question."

Since, therefore, we find express statutory authority for a subscription by a banking corporation to the capital stock of another corporation, and no express

or implied repeal of that authority, we can but conclude that such a subscription is valid.

The second question, whether there was a release of the bank from the obligation assumed, requires no critical review of the evidence. Clearly, there was a conditional agreement for such a release, but the evidence shows with equal clearness that the condition was not complied with.

The present action as originally instituted was against a number of stockholders of the insolvent hospital corporation, in addition to the appellant. As to these others, a compromise agreement was entered into by which they were permitted to satisfy their several obligations by paying a given per centum thereof. This privilege was extended to the appellant, provided it would make the payment within a definite time named in the judgment of the court. This time has expired pending the appeal; but since an appeal is a matter of right and it is not the policy of the law to penalize its taking when done in good faith, the appellant should be granted thirty days after the return of the remittitur from this court in which to comply with the alternative provision of the judgment; paying interest at the legal rate on the amount found due by the terms of the agreement from the date named in the judgment of the lower court to the date of satisfaction. The respondent will recover costs in this court.

The judgment is affirmed, with the modification indicated.

MAIN, C. J., MITCHELL, PARKER, and TOLMAN, JJ., concur.