[No. 33761. Department Two. March 14, 1957.]

THE STATE OF WASHINGTON, *on the Relation of Donald C. Haas, Appellant,* v. ALLAN POMEROY, *as Mayor of the City of Seattle, et al., Respondents.*[1]

*Edwards E. Merges,* for appellant.

*A. C. Van Soelen* and *C. V. Hoard,* for respondents.

*Weter, Roberts & Shefelman, amicus curiae.*

HILL, C. J.—The question presented is: Is an ordinance amending prior ordinances to change the rates charged by the municipally-owned water system, financed by revenue bonds, subject to a referendum vote under the terms and conditions of the Seattle city charter?

The question is raised by a demurrer to an application for a writ of mandate to compel the submission of ordinance No. 84392

". . . to the vote of the qualified electors for ratification or rejection, either at the next regular municipal election, or at a special election, as the city council in its discretion may provide." Seattle city charter, Art. IV, § 1 (K).

[1] Reported in 308 P. (2d) 684.

It is admitted by the demurrer that the requisite number of valid signatures have been secured and filed and that the necessary steps have been taken to invoke the referendum provision of the city charter if the ordinance is subject to referendum.

The trial court sustained the demurrer and dismissed the application for a writ of mandate. The applicant appeals.

At the time of the passage of ordinance No. 84392 in 1955, three pertinent ordinances were in effect in the city of Seattle, to wit: No. 58624, passed in 1929, which provided for the adoption of an over-all plan and system to better and extend the then-existing waterworks system and for the issuance and payment of revenue bonds to provide funds therefor; No. 65877, passed in 1935, by which water regulations were established and, in §§ 33 and 34, water rates prescribed; and No. 70097, passed in 1940, which amended §§ 33 and 34 of the 1935 ordinance to effect a change in water rates. Despite a rather comprehensive title and preamble, the ordinance which is the cause of the present controversy (No. 84392) does no more than amend §§ 33 and 34 of ordinance No. 65877 as amended by ordinance No. 70097.

To decide the question, we must determine whether the authority which the city council exercised in passing ordinance No. 84392 was granted by § 1, chapter 252, Laws of 1951, p. 791 [*cf.* RCW 80.40.010], as the relator contends, or by § 1, chapter 231, Laws of 1953, p. 559 [*cf.* RCW 80.40.100], as the respondents contend. Section 1 of the 1951 act grants to *cities and towns* the power to

" . . . construct, condemn and purchase, purchase, acquire, add to, maintain, and operate water works, . . . with full power to regulate and control the use, distribution, and price thereof: . . ."

while § 1 of the 1953 act grants extensive powers to *corporate authorities* when a utility's financing is through revenue bonds.

The issue is succinctly and fairly stated by the appellant in his brief:

"It is clearly the law and the trial court and all counsel agree that if the grant to make such an ordinance as No. 84392 is to the *legislative authority of the City* the council's action in passing such an ordinance is *not* subject to referendum because referendum is a creature of the City Charter which cannot limit power conferred by statute. *Conversely if the grant is to the corporate entity of the city itself,.the referendum may be invoked.* This is logical because the city being a creature of the statute itself cannot limit the same power that created it. On the other hand if the creative power itself gives the city a right to legislate upon certain things, there can be no bar to the city's legislating or in any way limiting those certain things."

This court has repeatedly recognized the distinction between a grant of authority by the legislature to a city as a corporate entity and to its legislative and other corporate authorities. For cases where a grant of power was to the city as a corporate entity, see *State ex rel. Harlin v. Superior Court* (1926), 139 Wash. 282, 286, 247 Pac. 4; *State ex rel. Walker v. Superior Court* (1915), 87 Wash. 582, 589, 152 Pac. 11. For cases where the grant of power was to the legislative authority of the city, see *Neils v. Seattle* (1936), 185 Wash. 269, 274, 53 P. (2d) 848; *Dolan v. Puget Sound Traction, Light & Power Co.* (1913), 72 Wash. 343, 346, 130 Pac. 353; *Ewing v. Seattle* (1909), 55 Wash. 229, 240, 104 Pac. 259; *Benton v. Seattle Electric Co.* (1908), 50 Wash. 156, 163, 96 Pac. 1033.

Chapter 150, Laws of 1909, p. 580, was

"AN ACT authorizing cities and towns to construct, condemn and purchase, purchase, acquire, add to, maintain, conduct and operate certain public utilities, providing for modes of payment therefor, . . . "

As it relates to municipally-owned waterworks, that act, as amended, and as revised by the state code reviser and again amended, remains the law today. See RCW 80.40.

Along with authorization of municipal ownership and operation of various other utilities, § 1 of the 1909 act (antecedent of § 1, chapter 252, Laws of 1951, p. 791 [cf. RCW 80.40.010]) authorized

". . . any incorporated city or town· within· the state

. . . to construct, condemn and purchase, purchase, acquire, add to, maintain, conduct and operate waterworks, . . . with full power to regulate and control the use, distribution and price thereof; . . ."

This section alone would authorize the city, as a corporate entity, to control rates, *i.e.*, "the price thereof".

Section 2 of that act (antecedent of § 1, chapter 147, Laws of 1941, p. 415 [*cf.* RCW 80.40.070]), which could be referred to as the "plan" or "system" section, had to do with procedures for the construction, purchase, or acquisition of the utilities referred to in § 1. It provided that, when

" . . . the city council or other corporate authorities . . . shall deem it advisable that the city or town . . . shall purchase, acquire or construct any public utility mentioned in section 1 . . . , the common council or other corporate authorities shall provide therefor by ordinance, which shall specify and adopt the system or plan proposed, and declare the estimated cost thereof as near as may be, . . ."

With certain exceptions, § 2 required submission of the ordinance to the qualified voters for ratification or rejection. It concluded with this significant provision:

" . . . Whenever a proposition has been adopted as aforesaid or . . . where no submission shall be necessary *the common council or other corporate authorities of such city or town shall have the power* to proceed forthwith to purchase, construct and acquire the public utility contemplated or to make additions, betterments and extensions thereto and to make payment therefor as hereinafter provided in section 3 and section 4." (Italics ours.)

Section 3 [*cf.* RCW 80.40.080] has to do with general obligation bonds when they have been approved by the qualified voters as a means of financing.

Section 4 (antecedent of § 1, chapter 231, Laws of 1953, p. 559 [*cf.* RCW 80.40.100]) had to do with the power and authority of the "common council or other corporate authorities" when no general indebtedness was authorized or incurred in connection with the exercise of the powers conferred on the cities by § 1. It provided that

" . . . *the common council or other corporate authorities shall have power* to create a special fund or funds for the sole purpose of defraying the cost of such public utility or addition, betterment or extension thereto, into which special fund or funds *the common council or other corporate authorities of such city or town may obligate and bind the city or town* to set aside and pay a fixed proportion of the gross revenues of such public utility, . . . or a fixed amount without regard to any fixed proportion, *and to issue and sell bonds or warrants bearing interest* . . ., payable semiannually, executed in such manner and payable at such times and places *as the common council or other corporate authorities of such city or town shall determine,* . . . *In creating any such special fund or funds the common council or other corporate authorities of such city or town* shall have due regard to the cost of operation and maintenance of the plant or system. . . . " (Italics ours.)

It is clear from the provisions of the 1909 act that, while the fixing of rates was not one of the powers specifically granted to "the common council or other corporate authorities," it was a necessarily implied power when revenue bonds were issued under § 4, because without the power to fix rates it would be impossible to exercise the power specifically granted to "the common council or other corporate authorities" to determine the amount which should be paid into the special fund or funds for the payment of bonds and interest. Section 1 of the 1909 act was amended in 1913, 1923, 1931, 1933, 1947, and 1951, and § 4 in 1931 and 1953, but nothing in those amendments has changed our conclusion as to the effect of § 4 on the express grant to cities or towns in § 1 to regulate and control prices. The 1953 amendment of § 4 confirms that conclusion. By it a sentence was added which reads: "Rates shall be maintained adequate to service such bonds and to maintain the utility in sound financial condition."

█ When a city-owned utility has revenue bonds outstanding pursuant to the authority granted corporate authorities by § 4 of chapter 150, Laws of 1909, or the amendments thereof (presently § 1, chapter 231, Laws of 1953 [*cf.* RCW 80.40.100]), the same corporate authorities that are empowered to issue the bonds must of necessity fix the

rates. The grant of power being to the corporate authorities and not to the city as a corporate entity, an ordinance which does no more than fix rates is not subject to the referendum provisions of the city charter, for the effect thereof would be to limit the power conferred by statute. See *Neils v. Seattle, supra; State ex rel. Harlin v. Superior Court, supra; Dolan v. Puget Sound Traction, Light & Power Co., supra; Ewing v. Seattle, supra,* and cases cited therein.

This holding is decisive of the issue presented to us and makes unnecessary the consideration of the other very persuasive contention made on behalf of the city council, *i.e.,* that even though enacted under a grant of authority to the city as a corporate entity, an ordinance that is administrative in character is still not subject to referendum.

The order sustaining the demurrer and dismissing the application for a writ of mandate to compel the city council of Seattle to submit ordinance No. 84392 to a vote of the qualified electors, is affirmed.

MALLERY, DONWORTH, WEAVER, and OTT, JJ., concur.