[No. 38576.     En Banc.     August 3, 1967.]

DONALD A. DAHL, *Appellant*, v. J. D. BRAMAN *et al.,*
*Respondents.**

*Edward Heavey,* for appellant.

*A. L. Newbould* and *Arthur T. Lane,* for respondents.

' DONWORTH, J.—This action was instituted by appellant,
as a taxpayer of the city of Seattle, against the mayor
thereof, the then members of its city council, and the then
members of the Seattle Transit Commission, to obtain a
declaratory judgment (and for appropriate injunctive re-
lief) under the provisions of RCW 7.24.010, declaring that
article 23 of the city charter is null and void as being in
violation of the state constitution and the laws of the state.

The complaint referred to certain statutes and charter
provisions which appellant alleged were violated by the
adoption of article 23. He further alleged that the commis-
sion was unlawfully managing and operating the transpor-
tation system of the city, and that he, as a taxpayer, has
been damaged by the resulting unlawful expenditure of
public funds for this purpose.

*Reported in 430 P.2d 951.

Respondents' answer admitted many allegations of the complaint but denied the allegations as to the invalidity of the charter provision in question.

Shortly after filing their answer, respondents made a motion for summary judgment of dismissal based on the pleadings. Appellant then moved for a summary judgment in his favor, stating that the pleadings and his own affidavit (which adopted as true the allegations of his complaint) showed that there was no genuine issue as to any material fact.

After hearing argument on the two motions, the trial court entered a summary judgment of dismissal, thus granting respondents' motion and denying appellant's motion.

On this appeal, this disposition of the case by the trial court is the basis for appellant's two assignments of error.

In his brief, appellant makes reference to some historical background of the Seattle Municipal Street Railway System. The city purchased the system from the Puget Sound Traction, Light and Power Company in 1919 for $15,000,000 of utility bonds payable out of the revenues. Prior to that time, the city had an existing street railway system that was very small by comparison. The revenue bonds were issued pursuant to ordinance No. 39,025 under the statute designated as § 8008 Rem. Code. *Cf.* RCW 35.92.100.

From 1919 to 1939, the street railway system was operated under the direction and control of the city council. As stated in appellant's brief, in about 1939 the need to modernize the system was becoming extremely urgent.

In that year, the legislature enacted Laws of 1939, ch. 47, which was entitled:

An Act relating to municipally owned street railway or surface transportation systems in cities having more than three hundred thousand population; providing for the borrowing of money from the Reconstruction Finance Corporation or any other agency of the United States government for street railway and surface transportation purposes in such cities, and for the issuance of bonds payable from the revenues of such systems to evidence such loans, the proceeds thereof to be used for the pur-

pose of purchasing and acquiring equipment and extensions, repairs, improvements and betterments to, and the operation of, said systems, and to refund outstanding indebtedness payable from the revenues of said system, to validate all such outstanding indebtedness and to create transportation commissions in such cities, and to prescribe the powers and duties thereof, and to repeal all laws or parts of laws and the provisions of any city charter in conflict herewith in so far as such conflict exists.

Pursuant to the authorization contained in this act, the city of Seattle entered into a loan agreement with the Reconstruction Finance Corporation and issued refunding bonds which were delivered to Reconstruction Finance Corporation. As required by § 5 of the act, the city created a transportation commission consisting of three commissioners to perform the functions prescribed therein.

In subdivision (g) of § 5 is found the following provision:

Such transportation commission shall continue in existence and shall have the powers and perform the duties hereinabove provided for so long as any bonds issued hereunder are outstanding and unpaid.

The refunding bonds issued pursuant to this act were all paid and retired on or before December 31, 1951. Meanwhile, on March 14, 1950, the voters adopted article 23 of the city charter, which was to become effective January 1, 1952.

Section 1, of article 23, provides as follows:

There shall be a "Seattle Transit Commission" composed of five members, appointed by the mayor and confirmed by the city council who shall serve without compensation. First appointments shall be made effective January 1, 1952, or as soon thereafter as practicable, and of the five commissioners first appointed, two shall be appointed for terms of two years, two for terms of four years and one for a term of six years. All subsequent appointments shall be for terms of six years. In the event of a vacancy, the mayor, subject to the approval of the city council, shall fill the same for the unexpired term. Commissioners shall be eligible to succeed themselves. Commissioners may be removed by the mayor upon filing notice of removal for cause with the city council, such

removal to be effective only upon confirmation by a majority of all members of the city council.

Said transportation commission, by majority vote, is authorized and empowered to:

Immediately following the last sentence quoted above, § 1 contains 11 subparagraphs which set forth in detail the powers of the commission (including the power to adopt, "to the extent permitted by law, an annual budget, including estimate of revenues and expenditures for the ensuing year, a copy of which shall be filed with the mayor and city council")[1]

Section 2 of article 23 provides:

Any powers herein conferred upon the transit commission which are in conflict with the general laws of the State of Washington shall not become operative unless and until said general laws are repealed, amended, or modified, or new laws are enacted authorizing the commission to exercise said powers.

(Sections 3 and 4 of article 23 relate to the repeal of certain then existing provisions of the city charter.)

It is to be noted that the public transportation system of the city has been continually managed and operated by the Seattle Transit Commission, created by article 23, for a period of 15 years. The city's authority to operate the transit system is derived from RCW 35.92.060, which provides that:

A city or town may also construct, condemn and purchase, purchase, acquire, add to, maintain, operate, or lease cable, electric, and other railways, automobiles, motor cars, motor buses, auto trucks, and any and all other forms or methods of transportation of freight or passengers within the corporate limits of the city or town for the transportation of freight and passengers above,

---

[1]In 1951, subsequent to the adoption of article 23 but prior to its effective date, the legislature enacted Laws of 1951, ch. 80 (RCW 35.32.195), which provided: "In any city of the first class having a population of three hundred thousand or more, where there is a transportation commission vested with the power to manage a municipal transportation system, that commission is hereby vested with the power to budget and manage all funds of the municipal transportation system."

upon, or underneath the ground, and fix, alter, regulate, and control the fares and rates to be charged therefor; and without the payment of any license fee or tax, or the filing of a bond with, or the securing of a permit from, the state, or any department thereof, and to engage in, carry on, and operate the business of transporting and carrying passengers or freight for hire by any method or combination of methods that the legislative authority of any city or town may by ordinance provide, with full authority to regulate and control the use and operation of vehicles or other agencies of transportation used for such business.

In his brief, appellant, after discussing our decision in *Winkenwerder v. Yakima,* 52 Wn.2d 617, 328 P.2d 873 (1958), and *Ayers v. Tacoma,* 6 Wn.2d 545, 108 P.2d 348 (1940), states his theory as to the invalidity of article 23 as follows:

It is apparent from these two cases and many other cases that unless the appellant can show that the enactment of the charter amendment which establishes the Seattle Transit Commission is contrary to the provisions of RCW 35.92.060, then the city must be upheld.

The appellant's theory in this case simply stated is: The power to acquire a transportation system is granted to the city in its corporate entity. The power to operate the transportation system is granted to the "legislative authority" of the city. This power to operate must be exercised by means of passing an ordinance that establishes the method of operation. The power to operate the system is the exclusive power of the legislative authority and cannot be limited by the city charter and is not subject to referendum. Therefore, the establishment of the Seattle Transit Commission under the terms of Article XXIII of the Seattle City Charter is invalid because it is not an act of the legislative authority of the city, nor is the legislative authority of the city operating the transportation system. There can be no question that if the passage of Article XXIII controvenes a statute it is invalid.

Appellant relies upon *Neils v. Seattle,* 185 Wash. 269, 53 P.2d 848 (1936), and cases cited therein, dealing with the grant of franchises to private utility corporations by the legislative authorities of a city.

The principles established by those cases are that, where there is a conflict between a general law enacted by the legislature and a freehold charter provision, the general law is superior to and supersedes the charter provision; and where the general law grants authority to the legislative authority of a city, that authority may not be exercised by the city as a corporate entity, nor is the exercise of that authority by the legislative authority subject to repeal, amendment, or modification by the people through the initiative or referendum procedure.

But, conceding the validity of those principles, the question remains whether the specific grant of authority under RCW 35.92.060 is to the city in its corporate capacity or to the legislative authority of the city or town.

If the grant is to the legislative authority of the city, Seattle's charter amendment 23, establishing the Seattle Transit Commission, is invalid because it is in conflict with the general law. If the grant, under RCW 35.92.060, is to the city in its corporate capacity, appellant admits in his brief that the charter amendment (article 23) is then valid.

The disposition of this case, therefore, rests upon the interpretation to be given RCW 35.92.060.

The forerunner of the present statute was enacted in Laws of 1897, ch. 112, § 1, p. 326, and provided, in part, that:

[A]ny incorporated city or town within the state be and is hereby authorized . . . to construct, condemn and purchase, purchase, acquire, add to, maintain and operate cable, electric or other railways within the corporate limits of such city or town, for the transportation of freight and passengers, with full authority to regulate and control the use and operation thereof, and to fix, alter, regulate and control the fares and rates to be charged thereon.

This language was reenacted by the legislature in Laws of 1899, ch. 128, § 1, p. 250; Laws of 1909, ch. 150, § 1, p. 580; and Laws of 1913, ch. 45, § 1, p. 112. The language is clearly a grant of authority to cities and towns in their corporate capacity and not to the legislative authority thereof. See

*State ex rel. Haas v. Pomeroy,* 50 Wn.2d 23, 308 P.2d 684 (1957).

Though the language quoted above underwent no substantial change, the legislature, in 1923, added a provision that:

> [W]henever such city or town shall own and operate a street railway with not less than one hundred (100) miles of main track, to purchase, acquire, add to, maintain, operate and lease automobiles, motor cars, motor busses, auto trucks, and any and all other forms or methods of transportation of freight or passengers, and, within the corporate limits of such city and in connection with its street railway system only, without the payment of any license fee or tax, or the filing of a bond with, or the securing of a permit from, the Secretary of State, to engage in, carry on, and operate the business of transporting and carrying passengers and freight for hire by any method or combination of methods that the legislative authority of any such city or town may by ordinance provide, with full authority to regulate and control the use and operation of vehicles or other agencies of transportation used for such business, and to fix, alter, regulate and control the fares and rates to be charged therefor; . . . . (Laws of 1923, ch. 173.)

It will be noted that this enactment did not remove the authority to operate electric railways from the city in its corporate capacity, but, on the contrary, granted the additional authority, under the stated conditions, for the city to operate "any and all other forms or methods of transportation" and to "engage in, carry on, and operate the business of transporting and carrying passengers . . . by any method or combination of methods that the legislative authority of any such city . . . may by ordinance provide."

This language was readopted in Laws of 1931, ch. 53, § 1, and Laws of 1933, ch. 163, § 1. Then, in Laws of 1947, ch. 214, § 1, the requirement that the city own and operate a street railway with not less than 100 miles of main track as a prerequisite to the operation of the other methods of transportation was eliminated, and the wording of the stat-

ute was made substantially identical to the present enactment.

The present statute, RCW 35.92.060, provides, in part, that:

A city or town may . . . operate . . . any and all . . . forms or methods of transportation of freight or passengers within the corporate limits of the city or town . . . and . . . engage in, carry on, and operate the business of transporting and carrying passengers or freight for hire by any method or combination of methods that the legislative authority . . . may by ordinance provide, . . . .

[1] Appellant would have us declare that the statute vests the authority to determine the method of *operating* the transportation system in the legislative authority of the city. We do not so read the statute. On the contrary, we are convinced, both by the express language of the statute and the history of the legislation, discussed *supra,* that the only authority granted therein to the legislative authority as opposed to the city in its corporate capacity, is the authority to "provide by ordinance" for the *method or combination of methods of transportation, i.e.* automobiles, motor cars, motor busses, etc., which shall be utilized in the system. The authority to operate the system, and consequently to determine the method of operation, remains vested in the city or town in its corporate capacity.

This being so, we find no conflict between article 23 of the charter, as adopted by the voters of Seattle in 1950, placing the authority to operate the city's transportation system in a commission of five members, and the provisions of RCW 35.92.060. There being no such conflict, we hold that article 23 of the charter of the city of Seattle is not unconstitutional.

The trial court's summary judgment dismissing appellant's action is affirmed.

FINLEY, C. J., HILL, WEAVER, ROSELLINI, HUNTER, HAMILTON, and HALE, JJ., concur.