[No. 42128.   En Banc.   March 16, 1972.]

THE STATE OF WASHINGTON, *on the Relation of George Guthrie, Appellant,* v. THE CITY OF RICHLAND *et al., Respondents.*

*Bennett & Carroll,* by *Richard H. Bennett,* for appellant.

*Donald B. Stancik,* for respondent City of Richland.

*Critchlow, Williams, Ryals & Schuster,* by *Rembert Ryals,* for respondent Meadow Springs Development Corporation.

ROSELLINI, J.—The City of Richland annexed 1,400 acres

of contiguous territory and, after making preliminary studies, enacted an ordinance entitled:

> AN ORDINANCE specifying and adopting a system or plan of additions to and betterments and extensions of the waterworks utility of the City, including the system of sewerage as a part thereof; declaring the estimated cost and expense of said system or plan as nearly as may be; providing for the issuance of "Water and Sewer Revenue Bonds, 1971," in the amount of $1,100,000.00 to obtain the funds with which to pay the cost of carrying out said system or plan; fixing the date, form, maturities, terms and covenants of such bonds; and providing for the calling of bids for the sale thereof.

Within 30 days of the effective date of the ordinance, as required by the Richland city charter, the appellant and others petitioned to have the ordinance referred. Their petitions contained the required number of signatures, but the city clerk refused to validate them. The appellant then sought a writ of mandamus to compel the submission of the ordinance to referendum vote, or, in the alternative, a declaration that the ordinance was void for any one of five reasons.

The superior court heard oral arguments and granted the respondents' motion to dismiss. We granted a request for an expedited appeal.

The one question of substance before the court is: Is an ordinance providing for additions, betterments and extensions to a municipally-owned waterworks, financed by revenue bonds, subject to a referendum vote?

The Richland city charter provides that all legislative ordinances are subject to the power of referendum. The respondents successfully contended in the superior court that this provision conflicts with RCW 35.92.070. They further argue, in support of the judgment, that the ordinance in question is an exercise of the administrative power of the city council, rather than its legislative power. We are of the opinion that the trial court reached the correct result upon the first ground argued. We therefore assume, with-

out deciding, that the ordinance constituted an exercise of the municipal legislative power.

The position which the appellants take in support of their right to require submission of the measure to the voters, through the referendum procedure, is that the legislature granted to the municipal corporation as an entity the power to improve and extend its waterworks, while it is the position of the respondents that the power was granted to the corporate authorities.

It is concededly the general rule that where a statute vests a power in the city as a corporate entity, it may be exercised by the people through the initiative or referendum process. *State ex rel. Haas v. Pomeroy*, 50 Wn.2d 23, 308 P.2d 684 (1957). In the cited case, we held that the power to change water rates was impliedly vested in the corporate authorities, under the provisions of Laws of 1953, ch. 231, § 1, p. 559, and that consequently a provision of the Seattle city charter authorizing the referendum could not be invoked.

It is settled that any charter provision which has the effect of limiting or restricting a legislative grant of power to the legislative authority or other officer of a city is invalid. *Neils v. Seattle*, 185 Wash. 269, 53 P.2d 848 (1936).

As we said in *Dahl v. Braman*, 71 Wn.2d 720, 430 P.2d 951 (1967), the principles established by that case and the cases cited therein are that, where there is a conflict between a general law enacted by the legislature and a freehold charter provision, the general law is superior to and supersedes the charter provision; and where the general law grants authority to the legislative authority of a city, that authority may not be exercised by the city as a corporate entity, nor is the exercise of that authority by the legislative authority subject to repeal, amendment or modification by the people through the intiative or referendum procedure. *Accord, State ex rel. Haas v. Pomeroy, supra.*

The constitution of this state, article 11, section 10, amendment 40, dictates this result. It provides that all

charters of municipal corporations shall be subject to, and controlled by, general laws.

Thus it is seen that the initiative and referendum may be invoked if these procedures do not thwart the legislative purpose. The basic principle is that the intent of the legislature must govern, and that conflicting charter provisions must yield to that intent.

When we look to the statute under consideration here with this principle in mind, we find it unnecessary to decide where the power to make additions, betterments and extensions was placed by the legislature, since the procedure for the exercise of that power is provided in the act.

RCW 35.92.010 grants to cities and towns the power to construct, condemn and purchase, purchase, acquire, add to, maintain and operate waterworks, for the purpose of furnishing the city and its inhabitants, and any other persons, with an ample supply of water for all purposes.[1]

The procedure to be followed is set forth in RCW 35.92.070 which provides:

> When the governing body of a city or town deems it advisable that the city or town purchase, acquire, or construct any such public utility or make any additions and betterments thereto or extensions thereof, it shall provide therefor by ordinance, which shall specify and adopt the system or plan proposed, and declare the estimated cost thereof, as near as may be, and the ordinance shall be submitted for ratification or rejection to the voters of the city or town at a general or special election, except in the following cases where no submission shall be necessary:
>
> (1) When the work proposed is an addition to, or betterment of, or extension of, or an increased water supply for, existing waterworks, or an addition, betterment, or extension of an existing system or plant of any other public utility for which no general indebtedness is to be incurred by the city or town;
>
> (2) When in the charter of a city or town a provision

---

[1] RCW 35.67 authorizes a city or town to make its sewerage system a part of its waterworks system, which the City of Richland had previously done in this case.

has been adopted authorizing the corporate authorities thereof to provide by ordinance for acquiring, opening, or operating any of such public utilities, for which no general indebtedness is to be incurred; or

(3) When in the judgment of the corporate authority, the public health is being endangered by the discharge of raw or untreated sewage into any river or stream and the danger to the public health may be abated by the construction and maintenance of a sewage disposal plant for which no general indebtedness shall be incurred by the city or town responsible for such contamination.

If a general indebtedness is to be incurred, the amount and terms thereof shall be included in the proposition submitted to the voters and such proposition shall be adopted by three-fifths of the voters voting at such election.

If no general indebtedness is to be incurred the proposition may be adopted by a majority vote.

Ten days' notice of the election shall be given in the newspaper doing the city or town printing, by publication in each issue of the paper during such time.

When a proposition has been adopted, or in the cases where no submission is necessary, the corporate authorities of the city or town may *proceed forthwith* to purchase, construct, and acquire the public utility or make additions, betterments, and extensions thereto and to make payment therefor.

(Italics ours.)

■ This provision presents no ambiguity. It expresses a legislative intent that the initial acquisition of a utility must be approved by the voters before the project is undertaken, except in certain circumstances, enumerated therein. After the proposed ordinance has been submitted to popular vote and approved, or without such submission where no such submission is required, the corporate authorities shall have power to "proceed forthwith to purchase, . . ."

To restate the statutory scheme, the proposition must be submitted to the voters in every instance where a general indebtedness is to be incurred; the initial acquisition must be submitted to the voters (even though no general indebt-

edness is to be incurred) if there is no charter provision giving the corporate authorities authority to provide by ordinance for acquiring, opening or operating the utility in question, unless the corporate authorities find that the public health is endangered and no general indebtedness is to be incurred under the plan adopted. Proposed additions, betterments or extensions need not be submitted to the voters if no general indebtedness is to be incurred.

Once the approval of the voters has been obtained, or without such approval if it is not required under the statute, the corporate authorities are authorized to proceed forthwith to acquire or construct the utility and make payment therefor. This means they are authorized to enter into contracts and issue bonds. These are things which cannot be effectively done until it is known that the city has authority to proceed. If the ordinance in question is subject to the referendum, its validity cannot be assured until the period for filing petitions has expired. And, of course, if the referendum is invoked, the authority to proceed cannot be determined until after an election is held.

Manifestly, then, the corporate authorities cannot "proceed forthwith," as they are authorized to do under the provisions of the statute, if the ordinance in question is subject to the referendum. The charter provisions authorizing the referendum and the provisions of RCW 35.92.070 are in irreconcilable conflict. Furthermore, the legislature quite obviously intended to substitute for the referendum procedure the procedure of submitting proposed ordinances to the voters in the first instance. According to the provisions of the statute, where the corporate authorities are *required* to submit a measure to the voters, the latter have a right to approve or reject it; but where no submission is required, the decision whether to proceed lies entirely within the discretion of the corporate authorities.

The rule that where a power is granted to the corporate entity the initiative or referendum may be invoked, is applicable only where these procedures do not conflict with the expressed legislative intent. It presumes that the

legislature intended to authorize these procedures where no contrary intent is expressed. But where, as here, the means of exercising the power given are expressly set forth in the statute, there is no room for such a presumption.

The appellant relies upon, and his position is supported by the decision of this court in *State ex rel. Harlin v. Superior Court,* 139 Wash. 282, 247 P. 4 (1926). In that case, the city council of Seattle had enacted an ordinance, providing for the acquisition of a street railway system, to be paid for by the creation of a special fund to be derived from the operation of the utility. A referendum petition, bearing the requisite signatures, was filed with the city comptroller and suit was begun to restrain him from submitting the ordinance to the vote of the people. The superior court's judgment dismissing the action was sustained by this court.

The city contended that it was empowered to proceed without submitting the proposition to the voters, relying upon Rem. Comp. Stat. § 9489, the provisions of which, insofar as material to this discussion, are substantially the same as those now contained in RCW 35.92.070. The city's position was that the second exception contained in that section was applicable, inasmuch as it had been authorized in its charter to acquire and operate such utilities, and that it was entitled to proceed with the acquisition without interference by way of referendum. In that case, as in this one, the city charter provided for referendum of legislative ordinances. Without attempting to determine the legislative intent in providing exceptions to the submission procedure, this court held that the grant of power to acquire street railway systems was made to the corporate entity, and further that the power could be exercised through the referendum process.

The reasoning of the court was contained in these paragraphs:

> A reference to the cited sections of the statute show [*sic*] that the grant in § 9488, *supra,* is to "any incorporated city or town," and in § 9213, *supra,* to "any munici-

pal corporation." These are clearly grants to the corporate entity of the city, as distinguished from the legislative authority. But it is said that § 9489 gives the grant to the legislative authority under the words contained in the second section, where it is provided,

"Whenever a proposition has been adopted as aforesaid or the cases mentioned in subdivisions first and second of this section where no submission shall be necessary the common council or other corporate authorities of such city or town shall have power to proceed forthwith to purchase, . . ."

But it is plain that § 9489 provides for the procedure and does not embody the grant of power. This holding is not in conflict with *Shorts v. Seattle,* 95 Wash. 538, 164 Pac. 241, where we held that the charter requirement as to special utility bonds was in conflict with § 9491 [P. C. § 1217] of the statute, which provided that special utility bonds should be ". . . executed in such manner and payable at such times and places as the common council or other corporate authorities of such city or town shall determine, . . ." It was there held, that fixing of the date of maturity of the bonds was left to the legislative authority, and could not be circumscribed by charter provisions. The granting of authority to the common council or corporate authorities to determine times of payment of bonds does not necessarily carry with it, nor imply, the grant of power to acquire the public utility in the first instance.

We think, therefore, the proper construction of this act is that the city, as a corporate entity, has been granted the power to acquire the street car system, and that § 9489, *supra,* merely provides the procedure. To hold otherwise would be to determine two specific grants of power, one to the city as a corporate entity, when a general indebtedness is incurred, and the other to the legislative authority of the city, when no general indebtedness is to be incurred.

*State ex rel. Harlin v. Superior Court, supra* at 286.

There can be no doubt that the opinion was correct in stating that Rem. Comp. Stat. § 9489 provided for the procedure and that the grant of power was contained in §§ 9488 and 9213. However, this court seems to have overlooked the fact that the question before it concerned the proper proce-

dure to be followed in exercising the power granted. Nowhere has it been suggested that, when a power is granted to the corporate entity, it may not be exercised through the enactment of ordinances by the governing body of the city. The question before the court was: Under the provisions of the statutes under consideration there, were such ordinances subject to referendum? Had the court applied the principle that the statute must be viewed as a whole and effect must be given to all of its parts, it would surely have observed that the invoking of the referendum necessarily thwarted the legislative purpose expressed in the grant to the corporate authorities of the right to *proceed forthwith* where no submission of the proposition was necessary under the statute.

If the case of *Shorts v. Seattle,* 95 Wash. 538, 164 P. 241 (1917), cited and distinguished by the court in the *Harlin* case, is studied, it will be seen that this court had held there that section 9489 means exactly what it appears to mean—that if by charter provision the people of a municipality have authorized their legislative authority to provide by ordinance for erecting, purchasing or otherwise acquiring, as the property of the city, a waterworks, the legislative authority may proceed to do so without submitting the proposition for voter approval.

Another case appearing in the same volume, *Shorts v. Seattle,* 95 Wash. 531, 536, 164 P. 239 (1917), was cited. That was an injunction suit to restrain the city authorities from selling water bonds. This court said in that case:

> We are convinced that, since the city charter specifically authorizes the city council by ordinance to acquire, own, and operate a water system such as the city long has had, the city has power, under the plain terms of the statute, to provide by ordinance for making additions, extensions, and betterments to that system, and to issue and sell bonds payable solely from the income to be derived from the system to pay for the same without submitting either proposition to popular vote for ratification.

Both of these suits, brought by the same plaintiff, contested the validity of city ordinances on the ground that

they had not been submitted to the voters for approval. Neither of them involved an attempted referendum. In that respect, they are distinguishable from *State ex rel. Harlin v. Superior Court, supra.* However, the conclusion reached in both of them—that where a proposition fell under one of the provisos, no submission to the voters was necessary—is irreconcilable with the result reached in *State ex rel. Harlin v. Superior Court, supra,* which permitted the voters to frustrate the legislative purpose through the referendum procedure.

This court in *Neils v. Seattle,* 185 Wash. 269, 282, 53 P.2d 848 (1936), wherein it was found that a grant of power to the corporate entity had been superseded by a subsequent enactment granting the power to the legislative authority, distinguished *State ex rel. Harlin v. Superior Court, supra,* saying:

> Under the provisions of the city charter, unrestricted by the particular statutes there involved, the ordinance in that case was clearly subject to referendum.

Unfortunately, this observation overlooked the fact that an issue necessarily involved in that case was *whether* the charter provisions were in conflict with the statute. It may be that the issue was not raised or argued by the parties in *State ex rel. Harlin v. Superior Court, supra.* However that may be, the decision as it stands is out of harmony with the sound and well-established principle that charter provisions which are in conflict with general laws of the state cannot be given effect.

We are convinced that, insofar as it held that an ordinance adopted under the authority of one of the provisos of the statute which is now RCW 35.92.070 may be subjected to the referendum, *State ex rel. Harlin v. Superior Court,* 139 Wash. 282, 247 P. 4 (1926), must be and it is hereby overruled.

The appellant has listed in his brief four respects in which he contends that the ordinance is invalid. None of these contentions is supported by citation of authorities. We have examined them and are not persuaded that they have

merit. It would serve no useful purpose to set them forth in this opinion.

The judgment is affirmed.

HAMILTON, C.J., FINLEY, HUNTER, HALE, NEILL, STAFFORD, and WRIGHT, JJ., concur.

Petition for rehearing denied May 5, 1972.